(104 So. 494)
MASSEY et al. v. REYNOLDS et al.
(6 Div. 259.)

(Supreme Court of Alabama. Jan. 15, 1925. Rehearing Denied May 14, 1925.)

1. Jury ⬳28(3)—Contestants of will held entitled, in probate court, to withdraw demand for jury trial, without consent of proponents.

Under Code 1907, § 6196, contestants in will contest *held* entitled, in probate court, to withdraw demand for jury trial, without consent of proponents; Gen. Acts 1915, p. 940, § 1, applying only to civil causes in circuit court.

2. Jury ⬳17(3)—Wills ⬳379—Neither party on appeal from probate court is entitled to de novo or jury trial in circuit court.

Neither party on appeal from decree of probate court, denying probate of will, is entitled to de novo or jury trial in circuit court.

3. Wills ⬳277—Averments contesting will held good against demurrer.

Averments in will contest, that will was not duly executed according to law, and that it was not duly and legally executed, *held* sufficient under Code 1907, § 6196, against demurrer.

4. Wills ⬳322—Exclusion of signature card and check of deceased held proper, in absence of showing of genuineness of signatures.

In will contest, exclusion of signature card and check of deceased, relevant only for purpose of comparing signature on instrument purporting to be the will *held* proper, in absence of showing of genuineness of signatures on such card and check.

5. Wills ⬳384—Exclusion of card and check purporting to contain deceased's signature held harmless.

Exclusion of signature card and check, purporting to contain deceased's signature, *held* harmless, within Gen. Acts 1915, p. 134, where his signature to the will was shown without dispute to be in his genuine handwriting.

6. Wills ⬳302(1)—When will as found must be maintained stated.

In will contest, if any theory consistent with validity of will can be suggested, which appears to be as probable as theory on which argument for invalidity is based, the will must be maintained.

7. Wills ⬳322—Where will is contested on ground of undue execution, proponents must show prima facie case of its execution, preliminary to reception of will in evidence.

Where will is contested on ground of undue execution, proponents must show prima facie case of its execution preliminary to reception of will in evidence.

8. Wills ⬳294, 303(7)—How prima facie due execution of will may be shown stated.

The prima facie due execution of a will may be shown by subscribing witnesses, and, if their testimony is insufficient, deficiency may be supplied by other evidence or circumstances, and, if subscribing witnesses swear it was not duly executed, they may be contradicted by other witnesses or circumstances.

9. Wills ⬳115, 117—Statute requires attestation of testator's signature by at least two witnesses, who must subscribe their names in presence of testator.

Code 1907, § 6172, enumerating requirements of will, requires attestation of testator's signature by at least two witnesses who must subscribe their names thereto in presence of testator.

10. Wills ⬳294—Execution of will may be proved by evidence and circumstances other than testimony of two subscribing witnesses.

Execution of will may be proved by evidence and circumstances other than testimony of two subscribing witnesses.

11. Wills ⬳118—Subscribing witnesses need not be present when testator signs instrument.

Subscribing witnesses need not be present when testator signs instrument.

12. Wills ⬳119—Not necessary that testator acknowledge to witnesses instrument subscribed to is his will.

It is not necessary that the testator inform witnesses that the instrument they are subscribing to is his will, or give them any information of its contents.

13. Wills ⬳289—Burden on proponents to prove prima facie due execution of will by testator before attestation by subscribing witnesses.

Where due execution of will was issue in contest, burden was on proponents to prove prima facie due execution of will by testator before it was attested by subscribing witnesses.

14. Wills ⬳289—What a person certifies to when he writes his name as witness to will stated.

One who writes his name as witness at request of testator and in his presence, under

word "witness" or other equivalent phrase, impliedly certifies thereby that he saw testator sign his name to the instrument, saw testator's name thereon, and that testator acknowledged that his name on instrument was his signature.

**15. Wills ⬤⟲303(3)—Contradictory oral evidence of subscribing witnesses is to be viewed with great caution and scanned with grave suspicion.**

In view of mode prescribed by Code 1907, §§ 6185, 6186, of proving wills, contradictory oral evidence of subscribing witness is to be viewed with great caution and scanned with grave suspicion, because it contradicts his written testimony, and is contrary to the confidence placed in him by testator.

**16. Wills ⬤⟲111(5)—Each subscribing witness must see testator sign it or see his name on it, and have his acknowledgment it is testator's signature.**

While a subscribing witness need not be present when testator signs the will, he must attest it—that is, must see him sign it, or see his name on it, and have his acknowledgment that it is his signature—before or at the time the subscribing witness subscribes his name to it as such.

**17. Wills ⬤⟲289—What proponents were bound to show in order to make out a prima facie case of due execution of will stated.**

Where will was contested as not duly executed according to law, burden of proof, in order to make out prima facie case, rested on proponents to offer some testimony showing the will was in writing, that it was signed by the testator, that two persons subscribed their respective names to it as witnesses in the presence of the testator under the word witness.

**18. Wills ⬤⟲119—No particular form of words of testator is necessary in acknowledging to subscribing witnesses name on instrument is his signature.**

No particular form of words of testator is necessary in acknowledging to subscribing witnesses that name on instrument is his signature.

**19. Wills ⬤⟲293(1)—How testator's acknowledgment that signature is his may be established stated.**

In view of Code 1907, § 6172, testator's acknowledgment to subscribing witnesses that signature on instrument is his may be proved by his words, or by his acts, or by circumstances surrounding him and them when subscribing, or by a combination of all three—his words, his acts, and circumstances surrounding them.

**20. Wills ⬤⟲322—Exclusion from evidence of original instrument purporting to be will, offered after examination of subscribing and other witnesses, held error.**

Exclusion from evidence of original instrument purporting to be will, offered after examination of subscribing and other witnesses, *held* error.

**21. Appeal and error ⬤⟲907(4)—Supreme Court cannot review and revise trial court on facts, where bill of exceptions does not purport to set out all or substance of all evidence adduced.**

Supreme Court cannot review and revise trial court on facts, where bill of exceptions does not purport to set out all or substance of all evidence adduced, but in such a case must presume the sufficiency of the evidence to sustain the decree rendered.

Appeal from Circuit Court, Jefferson County; Romaine Boyd, Judge.

Proceeding by Robert F. Massey and another to probate a will, and contest by Mary Reynolds and others. From a judgment of the circuit court affirming the decree of the probate denying probate, proponents appeal. Reversed and remanded.

The will involved is as follows:

"Be it Remembered that I Isham Eastis of Jefferson county Ala Being of Sound mind and memory but being well aware of the uncertainty of this Life do make this my last will and Testament at my Death after the Payments of my Just Debts and Funerel Expence. Furthemore it is my will and wishes to have my Coffen made by Hand by Some Carpenter and Pay Him well for his worke. Furthermore it is my wishes to have the Grave dug on the old Stile. Furthermore I want the close I ware on Sunday Put on, my Ded Body to be Buryed in. Furthermore I want a sinple Funerl I want my Ded Body cared to the Simitery in a wagon or Hacke Furthemore I dont want undertaker to have any thing to do with my Ded Body. Furthermore it is my will and full intention for my Sister Mary Reynoldes to have $500.00 Five hundred Dlls. I want my Sister Rutha Earnest to Have $500.00 five hundred Dlls, I want my Brothe David Thomas Eastis to have $500.00 five hundred Dolls. I want my nice Mamie Purle Earnest or Homes to have $1000.00 one thousnd Dollas, Furthermore it is my will after them I have named gets thares, I want my nepew William Marion Earnest to have the Rest of my Estate all ny Real Estate and Persnle Propety Land money and Evy thing I own for him to have and yoose as he see fit. This is my last will and Testament. I also a Point W. B. Baker and my cousen Robt. F. Masey with Bond to act as my Executers to see that the above contentes is Executed accordinge to my wishes.
"Witness
"W. L. Tillison      Isham Eastis
"B. A. Tillison      Isham Eastis
"This the 1st of Oct 1921."

Harsh, Harsh & Harsh, of Birmingham, for appellants.

Proponents were entitled to a trial by jury. Acts 1915, p. 940; Code 1907, §§ 6196–6198; Hartford F. I. Co. v. Bannister, 201 Ala. 681, 79 So. 253; Florida Nursery Co. v. Watson, 201 Ala. 97, 77 So. 391. Evidence in proof of testator's handwriting should have been admitted. Acts 1915, p. 134. The purported

---

⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

will was admissible. Bailey's Heirs v. Bailey's Ex'rs, 35 Ala. 687; Morris v. Varner, 32 Ala. 499; Barclift v. Treece, 77 Ala. 532; Gregory v. Walker, 38 Ala. 33; Matheson v. Caribo, 117 S. C. 291, 109 S. E. 102, 17 A. L. R. 1263; Kaufman v. Caughman, 49 S. C. 159, 27 S. E. 16, 61 Am. St. Rep. 808; Lloyd v. Roberts, 14 Eng. Rep. 871; In re Doughtery's Estate, 168 Mich. 281, 134 N. W. 24, 38 L. R. A. (N. S.) 161, Ann. Cas. 1913B, 1300. A will appearing to be regularly executed on its face will have every valid presumption indulged in favor of its validity. 1 Jarman on Wills (6th Ed.) 123; 1 Schouler (6th Ed.) 597; Woodroof v. Hundley, 133 Ala. 402, 32 So. 570; Barnewall v. Murrell, 108 Ala. 379, 18 So. 831. A subscribing witness, who seeks to overthrow the will, renders his credibility a matter of serious inquiry. In re Shapter's Estate, 35 Colo. 578, 85 P. 688, 6 L. R. A. (N. S.) 575, 117 Am. St. Rep. 216; 2 Woerner, 733; Lloyd v. Roberts, supra; Cooper v. Backett, 13 Eng. Rep. 365; Allen v. Scruggs, 190 Ala. 654, 67 So. 301. An acknowledgment of a will raises a presumption that the will was properly executed, which is not overcome by testimony of subscribing witnesses that they did not see any signature. In Dougherty's Estate, supra; Stephens v. Stephens, 129 Mo. 422, 31 S. W. 792, 50 Am. St. Rep. 454; Hobart v. Hobart, 154 Ill. 610, 39 N. E. 581, 45 Am. St. Rep. 151; Simpson v. Durbin, 68 Or. 518, 136 P. 347; 2 Schouler, 781; Estate of Carey, 56 Colo. 77, 136 P. 1175, 51 L. R. A. (N. S.) 927, Ann. Cas. 1915B, 951; Reed v. Whaley, 180 Ky. 57, 201 S. W. 482, L. R. A. 1918E, 423; 1 Woerner, 96; Armstrong's Ex'r v. Armstrong's Heirs, 29 Ala. 539.

Ritter, Wynn & Carmichael and McClellan, Rice & Stone, all of Birmingham, for appellees.

A will, to be valid, must be executed in conformity with the statute. Code 1907, § 6172. Attesting witnesses must either see the testator sign or he must acknowledge a previously affixed signature. Nunn v. Ehlbert, 218 Mass. 471, 106 N. E. 163, L. R. A. 1915B, 87; Leatherbee v. Leatherbee, 247 Mass. 138, 141 N. E. 669; Hawkes v. Hawkes, 230 Mass. 11, 119 N. E. 122; Tobin v. Haack, 79 Minn. 101, 81 N. W. 758; Reed v. Watson, 27 Ind. 445; Richardson v. Orth, 40 Or. 252, 66 P. 925, 69 P. 455; Hudson v. Parker, 163 Eng. Rep. 948; Matter of Mackay, 110 N. Y. 611, 18 N. E. 433, 1 L. R. A. 491, 6 Am. St. Rep. 410. The testator may sign either at the top, bottom, or upon the side, or upon any portion of the document, provided the same is done animo signandi. Armstrong's Ex'r v. Armstrong's Heirs, 29 Ala. 539; Lemayne v. Stanley, 3 Lov. 1, 83 Eng. Rep. 545. The intentions of the testator to execute a will cannot be relied upon as to formal requirements of the statute. Shane v. Wooley, 138 Md. 75, 113 A. 652; In re Cogan's Will, 101 Misc. Rep.

652, 168 N. Y. S. 937; Provident Ins. v. Mead, 88 N. J. Eq. 349, 102 A. 1053; In re Taylor's Estate, 39 S. D. 608, 165 N. W. 1079; Estate of Seaman, 146 Cal. 455, 80 P. 700, 106 Am. St. Rep. 53, 2 Ann. Cas. 726; 1 Alexander on Wills, 406; Maxwell v. Lake (Miss.) 88 So. 326; Heinbach v. Heinbach, 274 Mo. 301, 202 S. W. 1123; In re Haber's Will, 118 Misc. Rep. 179, 192 N. Y. S. 616.

MILLER, J. Robert F. Massey and W. B. Baker, as executors of the will, or instrument purporting to be the will, of Isham Eastis, deceased, filed a petition under the statute to have it duly probated as his last will and testament in the probate court of Jefferson county, where decedent resided at his death. Mary Reynolds, a sister and heir of decedent, and others, objected to and contested in writing the probate of the will on the ground (1) it was not duly executed according to law (2) that said decedent was of unsound mind at the time of its execution; and (3) its execution was procured through undue influence of Mrs. Ruth Ernest and Marion Ernest, either or both.

The probate court, on the hearing, without a jury, entered a decree denying the petition to probate the will on the ground it was not properly executed according to the laws of this state. The petitioners, appellants here, appealed from that decree to the circuit court. It was tried there on the record proper, and bill of exceptions signed by the judge of probate, and the decree of the probate court was affirmed by the judgment of the circuit court. This appeal is prosecuted by the petitioners from that judgment of the circuit court.

[1] The contestants demanded, in writing, a trial by jury in the probate court. The issue on the contest of the probate of a will must be made up under the direction of the court, and such issue must, on application of either party, be tried by a jury. Section 6196, Code 1907. The contestants, after demanding a jury to try the issue, filed a written waiver of that demand. This did not prevent the petitioners under the statute (section 6196, Code 1907) from afterwards demanding a jury to try the issue in the probate court, if they desired. It is true section 1 of an act, approved September 28, 1915 (Gen. Acts 1915, p. 940), states:

"And either party demanding a trial by jury shall not have the right to withdraw such demand without the consent of the opposite party."

This by the statute applies to civil causes at law in the circuit court. It has no application to this cause in the probate court. The petitioners cannot complain at the court allowing contestants, without their consent, to waive the jury trial.

[2] This cause on appeal in the circuit court is not tried de novo, with or without a

jury, but it is tried and reviewed upon the record, with bill of exceptions from the probate court, when required, by the circuit court without a jury. Neither party, on appeal from the probate court, is entitled to a de novo trial or a jury trial in the circuit court. Ex parte Sumlin, 204 Ala. 376, 85 So. 810; McKenzie v. Jensen, 195 Ala. 36, 70 So. 678; Truett v. Woodham, 98 Ala. 605, 13 So. 519.

[3] It appears from the evidence and decree of the probate court that the application to probate this will was contested on one ground alone—"that said purporting last will and testament of said Isham Eastis was not duly executed according to law." One averment in the contest stated it "was not duly executed according to law," and another averment therein stated it "was not duly and legally executed." These averments are each sufficient. They each state a valid ground of contest; and the court did not err in overruling demurrers of petitioners to each of them. Section 6196, Code 1907; Barksdale v. Davis, 114 Ala. 623, 22 So. 17.

[4, 5] T. O. Smith, president of a bank, had "a signature card and a check" of Isham Eastis. The petitioners offered them in evidence, and the court sustained objections of contestants to them. In this the court did not commit reversible error, if error at all. They could be relevant only in comparison with his signature to the instrument purporting to be his will. Neither the card nor the check was admitted to contain his genuine signature; his signature to neither was proven to the reasonable satisfaction of the court to be genuine; and his signature, once in the body of the alleged will and twice at its foot or bottom, were shown without dispute to be in his genuine handwriting. So the petitioners cannot complain at this ruling of the court. Act approved March 6, 1915, Gen. Acts 1915, p. 134.

The petitioners, proponents, offered in evidence the original instrument purporting to be the last will and testament of Isham Eastis, deceased, after the subscribing witnesses and many others were examined. The contestants objected to the introduction of it in evidence, on the ground that the execution thereof was not proven, and that the same was not executed according to law. The court sustained the objection, and petitioners duly excepted. A copy of the instrument appears in the report of the case. Did the probate court err in this ruling?

[6] The following rule as to wills has been declared in this court in Woodroof v. Hundley, 133 Ala. 402, 32 So. 570, and it should be remembered and followed by trial courts on applications to probate a will when contested:

"If any theory consistent with the validity of the will can be suggested, which appears to the court to be as probable as the theory on which the argument for the invalidity is based, the will as found must be maintained."

In Barnewall v. Murrell, 108 Ala. 381, 18 So. 831, this court wrote:

"It is undoubted law that any deficiency in the evidence of subscribing witnesses as to the due execution or identity of the instrument may be supplied by the evidence of other witnesses. If this was not true, the validity of wills would often depend, not upon the existence of facts rendering them valid, but upon the retentiveness of the memory of the subscribing witnesses. Hall v. Hall, 38 Ala. 131. As was said in this case: 'The law makes two subscribing witnesses indispensable to the formal execution of a will; but it by no means follows that the testimony of these witnesses is the only evidence by which the due execution of the will can be established. On the contrary, it is laid down as undoubted law that if, from forgetfulness, the subscribing witnesses should fail to prove the formal execution of the will, other evidence is admissible to supply the deficiency; or, if the subscribing witnesses all swear that the will was not duly executed they may be contradicted, and the will supported by other witnesses or by circumstances. See, also, Dewey v. Dewey, 1 Metc. 349.' The statute does not require that a testator should inform the subscribing witnesses that the instrument they are subscribing is his will, or give them any information of its contents. 1 Jarman on Wills, 80; 2 Green. Ev. 675; Leverett v. Carlisle, 19 Ala. 80; Garrett v. Heflin, 98 Ala. 617."

[7, 8] Preliminary to the will being admitted in evidence, when it is contested on the ground it was not duly executed, it is incumbent upon the petitioners to show prima facie its due execution. This may be done by the subscribing witnesses, and, if their testimony is insufficient, the deficiency may be supplied by other evidence or circumstances, and, if the subscribing witnesses swear it was not duly executed, they may be contradicted by other witnesses or circumstances. Authorities supra; Woodroof v. Hundley, 133 Ala. 401, 32 So. 570.

[9] Our statute (section 6172, Code 1907) provides a will to be effective to pass real and personal property, except as otherwise provided, must be in writing, signed by the testator or some person in his presence and by his direction, and attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator.

"The statute requires that the testator's signature shall be attested 'by at least two witnesses, who must subscribe their names thereto in the presence of the testator.'" Ritchey v. Jones, 210 Ala. 204, 97 So. 736.

This will is in writing. It is undisputed that it is entirely in the handwriting of the testator, except the signatures of the subscribing witnesses. The name of the testator, in his handwriting, appears in the beginning of the will and twice at the bottom

of the will. The evidence is without dispute that he wrote his name in the three places mentioned. There are two subscribing witnesses to it. The evidence without conflict shows each of the witnesses wrote his name there at the request of the testator, in the presence of the testator, and in the presence of each other. So the instrument on its face appears regular, properly executed, and duly attested as the statute requires.

But W. L. Tillison, one of the subscribing witnesses, testified, among other things, as follows:

He and his brother, the other subscribing witness, signed the instrument in the presence of each other and in the presence of the testator at his house, at his request, on or about October 1, 1921. The testator "called me there"—called "me and my brother." He "said he wanted to sign a will, his will," and he wanted us to sign it as witnesses. "He laid the paper down on the table and showed us where to sign." (It was the paper offered in evidence.) "Both of us signed it in his presence and in the presence of each other. That signature of testator looks like his handwriting. * * * Yes, sir; I wouldn't swear it was. No, sir; I wouldn't swear it was. I did not actually see him sign it."

On cross-examination he said:

"That date—this the 1st day of October, 1921—on the will was not there when I signed it. Neither of the signatures 'Isham Eastis' were there when I signed it. Never saw those signatures on there before now. I saw no writing at all on that paper at that time I saw it. If those signatures had been there when I signed it, I could have seen it."

"Question: And you know they were not there? Answer: No, sir.

"Question: That is the signature of Isham Eastis referred to? Answer: Yes, sir."

This witness, on redirect examination, testified among other things:

"I didn't look for a signature of Isham Eastis. Never thought about it. I didn't see any writing at all. It was folded so I couldn't see it. I never thought about looking for one [meaning signature of the testator]."

This witness on recross-examination by contestants, showed how the paper (will) was folded when he and his brother signed it as witnesses. This witness, on redirect examination by proponents, testified that Isham Eastis, when he called him and his brother, stated to them that "he just wanted us to come in there and sign that will as witnesses, and he was in his right mind."

B. A. Tillison, the other subscribing witness, testified for proponents in part as follows:

"My brother and myself signed that paper [meaning the will of decedent]. Isham Eastis asked us to sign it as witnesses. He just came out and called us to come in, that he wanted us to sign a will for witnesses, and that he was in his right mind. Both of us signed it in his presence. * * * What he called his will I signed. I do not know whether or not he had signed it. He folded down; we couldn't see anything but the bottom line."

This witness, on cross-examination, said:

"The two signatures 'Isham Eastis' were not there at the time he and his brother signed it."

The witness, on redirect examination, stated:

"I didn't notice any signature there; my attention was not called to whether or not the signature was there."

Then, on recross-examination, he stated:

"Yes, sir; I suppose I could have seen it if it had been there."

The witness, on redirect examination, stated the paper was folded below the writing, and that he did not see any writing on the will at all when he signed it. "He [Isham Eastis] called me to witness his will."

This statute (section 6172, Code 1907) as to the signing by the testator of the will is a substantial transcript of that part of section 5 of 29 Charles II, c. 3, and our court approved the construction of the British statute by the British decisions, and wrote the following in Armstrong v. Armstrong, 29 Ala. 540:

"According to those decisions, if the testator with his own pen writes his own name in the beginning of the will, thus, 'I, James Armstrong,' with the design of giving it authority, and acknowledges it to be his writing when he calls the subscribing witnesses to attest it; and if, at the time of acknowledgment, he does not intend to subscribe it, the signing is sufficient, under the statute, without any subscription of his name at the bottom."

The Armstrong Case, supra, has been cited by this court with approval in Goldsmith v. Gates, 205 Ala. 632, 88 So. 861, headnote 1. The Armstrong Case, however, is without application to the case at bar, because the testator subsequently signed his name twice at the bottom of the will.

The will here in question has the signature—name—of the testator written by him in its body; it has his name written by the testator twice at the bottom thereof. The entire instrument is in his handwriting, and is written in ink; the same kind of ink being used by the testator as was used by the witnesses in writing their names. It is all written on one page of a four-page piece of legal cap paper, and the age of the ink used by the testator appears to be the same age from the paper and faded condition as the ink used by the witnesses. The testator called these men who were living on his farm to come into his home for the purpose of signing his will as witnesses. He told them it was his will, and wanted them to sign it as witnesses, and he saw them sign it as witnesses in his presence. He is not here to

testify when he signed it and the circumstances surrounding him and the subscribing witnesses when they signed it as witnesses.

[10-12] The execution of the will may be proven by evidence and circumstances other than the testimony of the two subscribing witnesses. Allen v. Scruggs, 190 Ala. 654, 67 So. 301. And the subscribing witnesses need not be present when the testator signs it. Ritchey v. Jones, 210 Ala. 205, 97 So. 736, and authorities supra. It is not necessary for the testator to inform the witnesses "that the instrument they are subscribing is his will, or give them any information of its contents." Barnewall v. Murrell, 108 Ala. 382, 18 So. 831.

[13] The burden was on the proponents under the issue to prove, prima facie, the due execution of the will by the testator before it was attested by them as witnesses. Woodroof v. Hundley, 127 Ala. 640, 29 So. 98, 85 Am. St. Rep. 145; Id., 133 Ala. 401, 32 So. 570.

[14, 15] When there is proof, as in this case, that the will is in the handwriting of the testator, and his name in his handwriting appears twice at its bottom, that the names of two persons are subscribed in their respective handwritings on it under the word "witness," and they each admit the testator called each of them to "witness his will," and they each subscribed their names to it as witnesses in his presence, then the court or jury from this proof may with reason infer that each subscribing witness saw the testator sign his name to the instrument, or that each of them saw his name on it, and that he acknowledged to them that it was his signature before or at the time they wrote their names on it as subscribing witnesses. When a person writes his name as a witness to a will at the request of the testator and in his presence, under the word "witness" or other equivalent phrase, as here shown, he impliedly certifies thereby that he saw the testator sign his name to the instrument, or that he saw the name of the testator on it and the testator acknowledged that it was his signature. It will be competent for him to testify to the contrary because the court and jury desire the truth, but the jury or court, sitting as a court and a jury, should consider his contradictory oral evidence with great caution and scan it with grave suspicion; on account of it contradicting his written testimony, it reflects on his (witness') credibility, and it is contrary to the confidence placed in him by the testator. Ritchey v. Jones, 210 Ala. 204, headnote 7, 97 So. 736; section 6186, Code 1907; Scribner v. Crane, 2 Paige (N. Y.) 147, 21 Am. Dec. 81; Stevens v. Leonard, 154 Ind. 67, 56 N. E. 27, 77 Am. St. Rep. 446; sections 6185, 6186, Code 1907; Wright v. Sanderson, P. D. 9 Law Rep. 149.

[16] While it is not necessary that the subscribing witnesses be present when the testa-tor signs the will and see him sign it, still it is necessary that each subscribing witness must attest it; that is, each must see him sign it or see his name on it and have his acknowledgment that it is his signature before or at the time each subscribes his name to it as a witness. Ritchey v. Jones, 210 Ala. 204, 97 So. 736; Elston v. Price, 210 Ala. 597, 98 So. 5; and authorities supra.

[17-19] The burden of proof, in order to make out a prima facie case, rested on the proponent to offer some testimony showing the will was in writing; that it was signed by the testator; that two persons subscribed their respective names to it as witnesses in the presence of the testator under the word "witness." This proof was clearly made by the proponent, which made out a plain prima facie case, and it entitled the instrument to be, not only introduced in evidence, but admitted to probate, unless the contestants then by evidence can satisfy the court or jury that the testator had not signed the instrument when the two witnesses subscribed their names to it, or, if he had then signed it, that each subscribing witness did not attest it; that is, each witness did not see him sign it, and each witness did not see the name of the testator on the instrument and have his acknowledgment that it was his signature before or at the time it was subscribed to by each of them, or that some other valid ground of contest existed. Wright v. Sanderson, P. D. 9 Law Rep. 149; Ritchey v. Jones, 210 Ala. 204, 97 So. 736; Elston v. Price, 210 Ala. 579, 98 So. 573; and authorities supra. No particular form of words of the testator is necessary in his acknowledging to the subscribing witnesses that the name on the instrument is his signature. It may appear to them and be proved by his words, or by his acts, or by the circumstances surrounding him and them at the time of the subscribing, or it may appear to them and be proved by a combination of all three—his words, his acts, and the circumstances surrounding them. Authorities supra. See, also, Nelson v. McGiffert, 3 Barb. Ch. (N. Y.) 158, 49 Am. Dec. 170. This is not only a proper but a necessary construction of this statute (section 6172, Code 1907) to protect a person in the due execution of his will from forgetful, false, or corrupt or purchasable attesting and subscribing witnesses. Elston v. Price, 210 Ala. 579, 98 So. 573, and authorities supra. See, also, Stuck et al. v. Howard, post, p. 184, 104 So. 500.

[20] The proponents met this burden of proof, made out a prima facie case as to the due execution of the instrument by the decedent as his last will and testament, and the court erred in not admitting it in evidence. It should have been seen, read, and considered as evidence. The court should have admitted it in evidence, and considered it in connection with all the other evidence

to see if it was duly signed by the testator, and if it was afterwards duly attested and subscribed by the witnesses in the presence of the testator, and determined whether it should be admitted to probate as such. Woodroof v. Hundley, 133 Ala. 401, 32 So. 570; Id., 127 Ala. 640, 29 So. 98, 85 Am. St. Rep. 145; Bailey's Heirs v. Bailey's Ex'r, 35 Ala. 687; Morris v. Varner, 32 Ala. 499; Gregory v. Walker, 38 Ala. 33, and authorities supra.

The original instrument is before us. There is nothing in the folds of the paper or the paper itself to prevent the subscribing witnesses from seeing the two names of the testator at the bottom of it. It appears on its face, from the ink used in signing it by the testator and by the witnesses and from other circumstances, that the testator in their presence signed it at the bottom twice, once for each subscribing witness. His name appears opposite, and on the very line with, the name of each witness. Their names are less than two inches from his names or signatures. There is no evidence indicating that these two witnesses were blind. They each testified the testator called them into his home "to witness his will." They each in his presence signed their names to it under the word "witness." It is possible, but it is not probable, that he would have called them "into his home" to witness, to subscribe to, and to attest "his will"—an unsigned will by him, and an unwritten will by him. Their oral testimony in court after his death is to that effect; but this oral testimony is clearly and strongly contradicted by their written evidence. in the presence of the testator in his home, when he requested them "to witness his will."

[21] This court cannot discuss and determine from this evidence whether the will should be admitted to probate or not, because the bill of exceptions fails to state it contains all, or the substance of all, of the evidence before the trial court. All of the evidence is not before us. This cause was heard by the probate court without a jury, and, when the bill of exceptions does not purport to set out all or the substance of all the evidence, this court cannot review and revise the trial court on the facts, but will presume on appeal that there was sufficient evidence to sustain the decree rendered. Krebs v. Brown, 108 Ala. 508, headnote 4, 18 So. 659, 54 Am. St. Rep. 188.

But there is strong and valuable legal evidence, the original instrument, in the handwriting of the testator, with his name in his handwriting appearing therein three times, with names of two persons written thereon under the word "witness," which was not admitted in evidence, and which could not have been considered by the court in finding the facts on which to base its de-cree. We cannot decide what its decree would have been if this evidence had been admitted and considered by the court in reaching its conclusion. So, for this error, the decree must be, and is, reversed, and the cause remanded to the probate court for another trial de novo.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.