**BAKER et al. v. EASTIS et al.   (6 Div. 551.)**

(Supreme Court of Alabama.   Nov. 26, 1926.
Rehearing Denied Jan. 6, 1927.)

1. **Evidence** ☞474(14) — **Witnesses not knowing testator's signature or handwriting, could not testify whether will and signature was in his handwriting.**

Witnesses having testified that they did not know testator's signature or handwriting, refusal to allow questions to them, as to whether body of instrument and names of testator at the end were in his handwriting, was not error.

2. **Evidence** ☞474(14) — **Witness knowing testator's signature, but not familiar with his handwriting, could not give his judgment as to will being in his handwriting.**

It was not error to refuse to allow witness to testify whether, in his judgment, body of will was in testator's handwriting, he having testified that, while he knew his signature, he was not familiar with his handwriting.

3. **Witnesses** ☞245—**Proponents held not entitled to ask subscribing witness, in view of his prior testimony, who suggested to him that testator had not signed before him.**

In view of testimony of subscribing witness relative to will not having been signed by testator when witnesses signed it, *held*, proponents were properly not allowed to ask him who, at that late date—two years after date of will—suggested to him that there was not any signature to the will.

4. **Wills** ☞303(3)—**Jury may, from surrounding circumstances, find will was properly executed, though subscribing witnesses swear it was not.**

Though subscribing witnesses swear will was not properly executed, jury may find it was, if satisfied thereof from surrounding circumstances.

5. **Wills** ☞114—**Subscribing witness impliedly testifies he saw testator sign will, or saw his name thereon, and testator acknowledged signature.**

One writing name on will, at request and in presence of testator, under word witness, impliedly certifies that he saw testator sign it, or saw his name thereon, and testator acknowledged it was his signature.

6. **Wills** ☞302(1)—**Prima facie case for probate of will, contested as witnessed before signed, held made out by evidence of it being in testator's handwriting and signed by witnesses in his presence.**

Proponents of will, contested as not signed by testator before it was witnessed, make out

<hr>

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

a prima facie case for probate by evidence that it was in the handwriting of and signed by testator and that two persons subscribed it, as witnesses, in testator's presence.

**7. Wills ⬀288(1)—Contestants of will as witnessed before signed, have burden of overcoming proponent's prima facie case.**

Proponents of will, contested as witnessed before signed, having made out a prima facie case if their evidence be believed, contestants have the burden of overcoming such prima facie case to reasonable satisfaction of jury.

**8. Trial ⬀194(1)—Refusal of charges on effect and weight of testimony is proper.**

Charges, being on effect and weight of testimony, and so invading province of jury, are properly refused.

**9. Trial ⬀240—Argumentative charges are properly refused.**

Refusal of argumentative charges is proper.

**10. Trial ⬀191(1)—Charge must not assume disputed fact.**

A fact that is disputed from the evidence is improperly assumed by a charge.

**11. Trial ⬀256(1)—Requested charges, stating correct and applicable principle, are properly given, though needing explanatory charges.**

Where requested charges state correct principle of law applicable to the case, they are properly given, though they may need explanatory charges, which the other party could request.

**12. Appeal and error ⬀882(12) — One may not complain of interpretation in charge, where similar interpretation was in charge given at his request.**

Party may not complain of interpretation placed on statute by court's oral charge and charges given at request of opponents, where charge given at his request placed similar construction thereon.

**13. Trial ⬀295(1)—Oral charge must be considered as whole.**

Consideration is to be given the oral charge as a whole.

Appeal from Probate Court, Jefferson County; J. P. Stiles, Judge.

Petition of Robert F. Massey and W. B. Baker to probate a will, with contest by Mary Reynolds, David F. Eastis, and others. From a decree denying probate, petitioners appeal. Reversed and remanded.

These charges were refused to petitioners:

"(1) Notwithstanding the subscribing witnesses may all swear that the will was not properly executed, the jury may look to surrounding circumstances, and, if they are reasonably satisfied from such evidence that the will was properly executed, they are authorized to probate same."

"(4) When a person writes his name as a witness to a will, at the request of the testator, and in his presence, under the word "Witness" or other equivalent phrase he impliedly certifies thereby that he saw the testator sign his name to the instrument, or that he saw the name of the testator on it and the testator acknowledged that it was his signature."

"(6) I charge you, that, when the proponents offered evidence showing that the will in this case was entirely in the handwriting of the testator, except the signatures of the two witnesses, and that it was signed by the testator, and that two persons subscribed their respective names to it, as witnesses, in the presence of the testator, as witnesses to his will, this proof made out a prima facie case and prima facie entitles the will to probate, as the last will and testament of Isham Eastis."

"C. While the burden of proof is upon proponents to make out their case, as charged by the court, yet the court further charges you, that, if you believe the evidence, the proponents did make out a prima facie case, and that thereafter the burden of proof was upon the contestants to overcome such prima facie case to the reasonable satisfaction of the jury."

Charges 5 and 17, given for contestants, to which other given charges treated are similar, are as follows:

"(5) If the jury believe from the evidence that Isham Eastis hid his signature upon the document offered for probate as the will and testament of Isham Eastis at the time that the attesting witnesses, W. L. and B. A. Tillison, subscribed their names upon same, and that the said Isham Eastis went no further than to ask said witnesses to sign the paper placed before them, even though said Isham Eastis stated that it was his will, and if the jury further believe from the evidence that the signature of Isham Eastis, if there was a signature upon said paper, was not seen and could not be seen by the attesting witnesses, then said paper was not legally executed as the will of Isham Eastis, and your verdict must be in favor of the contestants."

"(17) If the jury believe from the evidence that, at the time the two attesting witnesses subscribed their names to the document propounded for probate as the last will and testament of Isham Eastis, they did not see Isham Eastis sign his name upon the same and did not see the signature of Isham Eastis, and that they could not see said signature thereon, if there were a signature, and said Eastis did not inform the said witnesses that he had signed said document or that his signature was upon same, then said document was not legally executed as his will, and your verdict must be for the contestants."

Harsh & Harsh, of Birmingham, for appellants.

An acknowledgment of the will is sufficient; it is not necessary that the signature be acknowledged. Massey v. Reynolds, 213 Ala. 178, 104 So. 494; 1 Schouler on Wills, 599; Ellis v. Smith, 1 Ves. Jr. 9; Illat v. Genge, 163 Eng. Rep. 689; Dougherty v.

---

⬀For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Crandall, 168 Mich. 281, 134 N. W. 24, 38 L. R. A. (N. S.) 161, Ann. Cas. 1913B, 1300; Reed v. Hendrix's Ex'r, 180 Ky. 57, 201 S. W. 482, L. R. A. 1918E, 423. Where the subscribing witnesses swear that the testator's signature was not on the will at the time they witnessed same, their testimony should be scanned with great caution. Stuck v. Howard, 213 Ala. 184, 104 So. 500; Massey v. Reynolds, supra. The instrument being regular on its face and entirely in the handwriting of the testator, it was prima facie entitled to probate. Ritchey v. Jones, 210 Ala. 204, 97 So. 736; Elston v. Price, 210 Ala. 579, 98 So. 573; Authorities ubi supra. Proponents having made out a prima facie case, the burden of proof shifted to contestants. 1 Schouler, 597; In re Shapter's Estate, 35 Colo. 578, 85 P. 688, 6 L. R. A. (N. S.) 575, 117 Am. St. Rep. 216.

Ritter, Wynn & Carmichael and McClellan, Rice & Stone, all of Birmingham, for appellees.

Appellants cannot complain of charges given for appellees, stating the law as embraced in a charge given at the instance of appellants. Corona Coal Co. v. Ferrier, 187 Ala. 530, 65 So. 780; L. & N. v. Holland, 173 Ala. 675, 55 So. 1001; 38 Cyc. 1711. Attestation requires that the witnesses see the signature to be attested. Elston v. Price, 210 Ala. 579, 98 So. 573. Appellant's requested charges were refused without error. Southern R. Co. v. Hayes, 198 Ala. 602, 73 So. 945; Woodruff v. Hundley, 127 Ala. 640, 29 So. 98, 85 Am. St. Rep. 145.

This case was submitted under Supreme Court rule 46, and the opinion of the court was prepared by Mr. Justice MILLER.

This is a petition by Robert F. Massey and W. B. Baker to have probated an instrument as the last will and testament of Isham Eastis, deceased, in which they are named as executors.

Mary Reynolds, a sister and heir of decedent, and other heirs contested in writing the probate of this instrument on the sole ground it was not executed as required by the laws of Alabama.

This is the second appeal to this court in this case. See Massey v. Reynolds, 213 Ala. 178, 104 So. 494. It was first tried by the probate judge, without a jury. He held the instrument was not admissible in evidence and, under the testimony, could not be probated, as it was not duly executed as the statute requires. The petitioners appealed to the circuit court, and the conclusion of the probate judge was confirmed by that court. Then the petitioners appealed to this court, and it was here held that the instrument, under the testimony, should have been admitted in evidence and the probate judge erred in excluding it; and, as the bill of exceptions failed to state it contained all or the substance of all the testimony, this court could not decide whether or not the instrument should be admitted to probate as the will of decedent. So the cause was reversed and remanded for another trial de novo. 213 Ala. 178, 104 So. 494.

When the cause was remanded by this court for another trial the petitioners, proponents, demanded a trial by jury. The same issue was tried in the probate court with a jury. They found the issue in favor of the contestants, and from a judgment thereon by the probate court against the probate of the instrument propounded, this appeal is prosecuted to this court by the proponents, the petitioners.

Isham Eastis died on the 11th of July, 1923, in Jefferson county, Ala., where he resided as a citizen of this state. Among his possessions, after his death, was found an envelope which was sealed and had this indorsement thereon, in his handwriting:

"Last will and testament of Isham F. Eastis not to be opened until all parties are present."

The instrument bears date of October 1, 1921. The envelope was opened. It contained the instrument offered for probate as the last will and testament of Isham Eastis, deceased. It is set out in full in the report of this case on former appeal. See 213 Ala. 179, 104 So. 494, for it. It is, without dispute, that this instrument is in writing, entirely—every word of it—in the handwriting of the decedent, except the names of the witnesses W. L. Tillison and B. A. Tillison. The name of the testator appears in its body, and his signature appears twice at the bottom of the instrument in his handwriting. There are two names written under the word "witness." Each of said persons testify that he wrote his name there. That part of the statute applicable states:

"No will is effectual to pass real or personal property, * * * unless the same is in writing signed by the testator * * * and attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator." Section 10598, Code of 1923; section 6172, Code of 1907.

So this instrument, on its face, when taken from the sealed envelope, where it was inclosed with this indorsement thereon made by the testator, "Last will and testament of Isham F. Eastis," appears regular, properly executed and duly attested as the statute requires.

The instrument was shown to W. L. Tillison, and he testified:

"Isham Eastis called us into his house and asked us to sign our names, as witnesses, to a paper which he said was his will."

When shown the paper purporting to be the last will of Isham Eastis, the witness further testified:

"The paper which you show me is the one we signed, and the name, 'W. L. Tillison' under the word 'witness' was signed by me. The name 'B. A. Tillison,' signed under my name, was signed by my brother. Those two signatures were signed by us in response to the request of Mr. Isham Eastis, and he asked me and my brother to sign in his presence, and we both signed it in each other's presence."

The testimony of B. A. Tillison was substantially the same as his brother's. Their testimony on the first trial was introduced in evidence on this trial, and it is referred to and quotations are made from each, in the opinion in this court in 213 Ala. 178, 104 So. 494, which will not be repeated here. But they each also testify that the paper was so folded by the testator, when they signed it, that they could see no writing thereon, not even the word "witness" nor the signatures of Isham Eastis; that the signatures of Isham Eastis were not written at the bottom of the instrument when they signed it. They state it was signed by each of them in October, 1921.

W. L. Tillison also testified:

"You asked me what occurred there that made me think, for the first time, whether or not there was a signature on the will at the time I signed it, and I answer, 'I—when—after he died, I got to thinking about it, studying how it was, and I remembered. I remembered I hadn't seen anything on it, and that was the first time I had thought about it since then.' I wasn't studying about it at the time I signed the will or about it every day. Yes, sir; I have sworn that, at the time I signed the will as a witness, I never thought about it, and my attention was not called to whether or not there was a signature of Mr. Eastis on it and I never thought about it, and that is so. And it is so that, for the first time in my life, I thought about whether or not the signature of Isham Eastis was on the will was when Mr. Ritter and Mr. Reynolds came out to my house.

"No, sir; there was no writing visible on the paper when I put my name on it. Mr. Eastis kept his hand on that paper when me and my brother wrote our names on it. It was lying on the table folded this way, and he kept his hand on it. Yes, sir; Mr. Ritter came out to see me and my brother. I am not a lawyer, and I never knew what it took to make and execute a will under the laws of Alabama. I am a farmer, about 39 years old. Mr. Ritter and Mr. Dan Reynolds did not come to my house after the death of Mr. Eastis and make any suggestions to me as to what I should testify in this case. They did make inquiries as to what did take place on that day, and in answering the questions I told him I never saw his signature or writing of any kind on that paper. My brother was present when they were there."

B. A. Tillison also testified:

"You ask me who I talked to before I testified the first time about this case, and I answer, 'I did not talk to any one but you and Mr. Ritter; made a statement to you and Mr. Ritter. I did not talk to you in the presence of Mr. Ritter; I talked to you separately. I talked to Mr. Ritter first. Mr. Reynolds was with Mr. Ritter when I talked to him; that was the first time and that is all who were with me.' You asked me if that was the first time I talked to anybody about whether the signature was there, and I answered, 'No; Mr. Nelson was the first time.' You ask me if it isn't a fact that I never talked to Mr. Nelson about the signature, and I answer, 'I told him there wasn't a mark on it.' I told him I hadn't seen a mark on it—that is all I told him. Then Mr. Ritter and Mr. Reynolds were the first ones I talked to about the signature, that is, specifically about the signature. I never told Mr. Reynolds that I looked for a signature to see whether it was there. As a matter of fact, I didn't look, and, as a matter of fact, nothing occurred to call my attention to whether or not it was there. Yes, sir; on the former trial Mr. Ritter asked me, 'At the time you signed it, there was no writing visible on the paper?' and I answered, 'No, sir; it was folded down to here.' You asked me if I was not asked by Mr. Ritter as follows: 'Folded down to the last line of the body?' and if I didn't answer 'Yes, sir'; and if I was not further asked the following question: 'At the time you signed it, there was no writing visible on the paper?' and if I did not answer 'No, sir; it was folded down here—folded down to the last line of the body,' and I answer, 'I don't think so. I would not say it is not there. I don't remember that I swore that.' Yes, sir; I am now swearing, several years after the occurrence, that there was no signature on the paper at the time I signed it, and I admit that I never mentioned the signature to anybody; never discussed the signature of Mr. Isham Eastis until after his death when I discussed it with Mr. Ritter and Mr. Reynolds. That is true; and it is true that nothing was said at the time I was asked to sign my name as witness to call my attention to whether or not there was not a signature. I never thought about the matter, or gave the matter further thought until long afterwards, until the conversation between me and Mr. Ritter and Mr. Reynolds, which happened at my house after Mr. Eastis died; that is, the conversation with Mr. Ritter and Mr. Reynolds was shortly before the first trial of the case. I cannot repeat just all that was said at that conversation, but I made the statement of it as I did at first. I cannot repeat all of it; about calling us in and signing his will; we following him in the house; and he laid the folded paper down on the table and showed us where to sign, and we signed our names to the paper, not seeing a mark on the paper. I told Mr. Ritter and Mr. Reynolds there wasn't a mark on it that I could see; if it was there, it was covered up. Yes, sir; I told them my attention was not called to it; that nothing happened to direct my attention to whether or not there was a signature there. I told them I had not thought about the matter since then; I didn't put that in my statement —no, sir; I don't think so."

[1] The court did not err in refusing to allow proponents to propound questions to W. L. Tillison and B. A. Tillison as to whether the body of the instrument and names of the

testator at the bottom were in his handwriting, as each testified they did not know his signature or his handwriting. Then there is no dispute in the testimony on that subject.

[2] Keller, witness for proponents, testified he knew the signature of decedent, and his names at the bottom and in the body of the instrument were in his handwriting, but he was not familiar with his handwriting; and the court did not err in refusing to let him testify as to whether, in his best judgment, the body of the instrument was in his handwriting. He was not familiar with his handwriting; simply knew his signature; and it was undisputed that the entire instrument, except the names of the two witnesses, was in the handwriting of the decedent.

[3] In view of the testimony of W. L. Tillison, as hereinbefore quoted in this opinion, and as it further appears in the bill of exceptions, together with the form in which they are asked, the court did not err in sustaining objections of contestants to these questions propounded by proponents to him:

"Who was it suggested to you there wasn't any signature to the will—at least, that you didn't see the signature?

"What put it in your head at that late day —more than two years after the thing was signed?"

The witness had previously, practically, answered these questions.

[4-7] Written charges, 1, 4, 6, and C, requested by proponents, each state a correct principle of law applicable to the different phases of the testimony in this cause, and each should have been given by the court. Massey v. Reynolds, 213 Ala. 178, 104 So. 494; Stuck v. Howard, 213 Ala. 184, 104 So. 500, and authorities there cited.

[8-10] The court did not err in refusing written charges 5, A, B, and 3, requested by the proponents. Charges 5 and A are on the effect and weight of the testimony and thereby invade the province of the jury, and each is argumentative. Charge 3 is argumentative. Charge B improperly assumes that the name of the testator was on the bottom of the instrument when the witnesses subscribed their names to it, as witnesses. This was a disputed fact from the evidence and its reasonable tendencies and inferences.

[11] The trial court did not err in giving written charges numbered 16, 17, and 18, requested by contestants to the jury. If they needed explanation, the proponents could have requested charges to that effect.

Written charges 5, 6, 9, and 19, requested by the contestants, were properly given by the court, as each states a correct principle of law applicable to this case. Some of them may have needed explanatory charges, which proponents could have requested.

Massey v. Reynolds, supra; Stuck v. Howard, supra; Elston v. Price, 210 Ala. 579, 98 So. 573; Ritchey v. Jones, 210 Ala. 204, 97 So. 736.

[12] The proponents requested, in writing, a charge lettered M by us in pencil on the margin of the record, page 10-B, which seeks the same interpretation of the statute, as to attestation by the subscribing witnesses, as is placed on it by the said written charges numbered 5, 6, 9, and 19 by contestants, and this charge M was given to the jury by the court. So the proponents cannot complain at this interpretation placed on the statute by the court in its oral charge and in written charges 5, 6, 9, and 19, because the court gave charge M, at their request, to the jury, which placed a similar construction thereon. See Corona Coal Co. v. Ferrier, 187 Ala. 530, 65 So. 780; L. & N. R. Co. v. Holland, 173 Ala. 675, 55 So. 1001. Then this construction of the statute as to attestation is in accord with the interpretation placed on it by this court in Elston v. Price, 210 Ala. 579, head note 2, 98 So. 573; Massey v. Reynolds, supra, and Stuck v. Howard, supra.

[13] The proponents excepted to certain parts of the general oral charge of the court to the jury. The oral charge must be considered as a whole, and when so considered it is free from error, and it is in accord with the opinion of this court on former appeal and the authorities there cited. The other questions argued will hardly arise on another trial.

As the cause must be reversed, it is unnecessary for us to pass on the motion for a new trial. So, for errors mentioned, the decree is reversed and the cause remanded for another trial de novo.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.