JONES, Justice.
This is a will contest. The question: Where the sole surviving attesting “witness” denies that she affixed her signature to the will as an attesting witness, may other evidence be admitted to prove the execution and attestation? Contestants/appellants, Billy London, Edward London, and Tommy London argue that such evidence is inadmissible, citing Code 1975, § 43-8-167. Proponent/appellee, James A. Harris, Jr., contends that such evidence is admissible. We agree with the proponent and affirm.
This appeal involves the wills of James A. Harris (“Archie”) and Ida Mae Harris, husband and wife. Ida Mae had been married twice previously. She had six sons by her first marriage. Three of these six sons are contestants in this case. By her second marriage, she bore three children. Ida Mae and Archie had one son together, James A. Harris, Jr. (“Jim”). Jim is the proponent of the will. Archie also had children by a previous marriage.
Archie died in the fall of 1983. Ida Mae died in January of 1985. After Ida Mae’s death, and after obtaining the instruments from Tommy London, Jim offered for probate two instruments purporting to be the last wills and testaments of Archie and Ida Mae. The wills appeared to be properly executed and witnessed. The purported attesting witnesses were Evelyn M. Smith and Albert P. Smith. At the time of probate, Evelyn was the sole surviving witness; Albert had died in 1971. Ida Mae and Archie made testamentary gifts of all real and personal property to each other. Each designated that, upon the death of the surviving spouse, Jim Harris would take all the property, should he survive; but, should he not survive, then the property would go to the children of both Ida Mae and Archie. Should both testators die, Jim was to be executor. The wills were dated January 20, 1970.
When the wills were offered for probate in the spring of 1985, Evelyn M. Smith denied that either of the two signatures as witnesses to the wills was hers or her husband’s. Evelyn Smith claimed that she never knew the Harrises had a will, that neither she nor her husband witnessed the wills, and that her husband was physically unable in 1970 to sign as a witness to any will; but she acknowledged that someone had done a good job of copying her signature.
The probate court ruled, as a matter of law, that under the provisions of § 43-8-167, because it was not established that Evelyn Smith was insane or incompetent, the wills could not be admitted to probate. Proponent Jim Harris appealed to the circuit court.
A handwriting expert testified at trial that the signatures of the testators were indeed the signatures of Ida Mae and Archie Harris, and that the signatures of the attesting witnesses were the signatures of Albert P. and Evelyn M. Smith, and were not forgeries. The circuit court, in finding for proponent Harris, held:
“[Where] the sole surviving witness to a will denies the fact of witnessing, proof *470 of the handwriting of that witness is proper evidence.
“... [E]vidence was allowed in this case of statements made by the testator that bear on the question of whether or not the purported witnesses in fact witnessed the will. Such is proper corroborative evidence.”
At the heart of this controversy is the construction of § 43-8-167, which provides, in pertinent part:
“(a) Wills offered for probate, except nuncupative wills, must be proved by one or more of the subscribing witnesses, or if they be dead, insane or out of the state or have become incompetent since the attestation, then by the proof of the handwriting of the testator, and that of at least one of the witnesses to the will. Where no contest is filed, the testimony of only one attesting witness is sufficient.
“(b) If none of the subscribing witnesses to such will are produced, their insanity, death, subsequent incompetency or absence from the state must be satisfactorily shown before proof of the handwriting of the testator, or any of the subscribing witnesses, can be received. ...”
Appellants contend that the plain meaning of § 43-8-167 is that all extrinsic evidence should be prohibited unless the requisites of § 43-8-167 are met. Because proponent Harris failed to prove that Evelyn Smith was insane or incompetent, argue contestants, the testimony of other persons should not have been allowed in evidence to prove the signatures. Contestants’ assertion is without merit.
Basic to our construction of the Probate Code (§ 43-8-1, et seq.), of which § 43-8-167 is a part, are the directives of § 43-8-2:
“(a) This chapter shall be liberally construed and applied to promote its underlying purposes and policies.
“(b) The underlying purposes and policies of this chapter are:
“(1) To simplify and clarify the law concerning the affairs of decedents;
“(2) To discover and make effective the intent of a decedent in the distribution of his property.”
Although we find no Alabama cases where these facts (i.e., that the sole surviving “witness” denies that the signature on the will is hers) have been addressed, analogous situations have been considered. For example, where an attesting witness is available at probate, and is neither insane nor incompetent, but fails to confirm due execution, the Court has uniformly allowed secondary evidence to ascertain the decedent’s intent:
“The law makes two subscribing witnesses indispensable to the formal execution of a will; but it by no means follows, that the testimony of these witnesses is the only evidence by which the due execution of the will can be established. On the contrary, it is laid down as undoubted law, that if, from forgetfulness, the subscribing witnesses should fail to prove the formal execution of the will, other evidence is admissible to supply the deficiency; or, if the subscribing witnesses all swear that the will was not duly executed, they may be contradicted, and the will supported by other witnesses, or by circumstances....” Hall’s Heirs v. Hall’s Executors, 38 Ala. 131, 133-34 (1861). See, also, Staples v. Harris, 264 Ala. 629, 632, 89 So.2d 167 (1956).
Indeed, in situations where an attesting witness denies the proper execution of the will, the Court has held that such denial should be cautiously considered:
“When a person writes his name as a witness to a will at the request of the testator and in his presence, under the word ‘witness’ or other equivalent phrase, as here shown, he impliedly certifies thereby that he saw the testator sign his name to the instrument, or that he saw the name of the testator on it and the testator acknowledged that it was his signature. It will be competent for him to testify to the contrary because the court and jury desire the truth, but the jury or court, sitting as a court and a jury, should consider his contradictory oral evidence with great caution and *471 scan it with grave suspicion; on account of it contradicting his written testimony, it reflects on his (witness’) credibility, and it is contrary to the confidence placed in him by the testator.” (Emphasis added.) Massey v. Reynolds, 213 Ala. 178, 183, 104 So. 494 (1925).[1]
We agree with the rationale of these cases. To disallow the secondary evidence would be contrary to the underlying purpose of the statute, which is to “discover and make effective the intent of a decedent in the distribution of his property.” § 43-8-2(b)(2).
For these reasons, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES and STEAGALL, JJ., concur.

. We adhere to the holding in the first appeal of Massey (213 Ala. 178, 104 So. 494 (1925)), notwithstanding a subsequent modification of a portion of its holding on the third appeal of the case (Reynolds v. Massey, 219 Ala. 265, 122 So. 29 (1929)).