8 So.2d 866

## LITTLE v. SUGG et al.

### 8 Div. 120.

Supreme Court of Alabama.

May 28, 1942.

Rehearing Denied June 30, 1942.

Beddow, Ray & Jones, of Birmingham, J. Foy Guin, of Russellville, and A. H. Carmichael, of Tuscumbia, for appellant.

Orlan B. Hill and A. A. Williams, both of Florence, for appellees.

204

FOSTER, Justice.

This is an appeal from a judgment of the circuit court which sustained a contest of the alleged will of one Charles R. Burgess, and denied the petition to probate it as such. The trial was had by a jury and the judgment was in accordance with the verdict of the jury.

By the terms of the will, decedent bequeathed all his property to a sister, Agnes Burgess Little, except one dollar to a brother and one dollar to another sister. The contest was filed by the sister to whom one dollar was bequeathed, and the children of another sister who was then deceased.

The issue of fact to which was directed most of the evidence was whether the will was procured by undue influence and whether the decedent had mental capacity at the time to make a valid will. The alleged mental incapacity was largely associated with the habitual drunkenness of decedent, who was approximately seventy-two years of age, had never married, but had accumulated a very substantial estate, all embraced in the terms of the alleged will.

The sister, Mrs. Little, the principal legatee, had a son named Fontaine Little, who was present when the will was executed and who, it is claimed, procured the will by undue influence. There was some evidence that he wrote the will and secured the presence of the witnesses to its execution. He was a man of experience in business affairs and had been postmaster at Sheffield. He and his family and mother and father lived in his mother's apartment over some stores in the city. He had a business office, also on the same floor, in which the alleged will was executed in the presence of the two witnesses who signed it as such, and Fontaine Little was also present. The record shows that the following occurred as to him:

Kidd, a witness to the will, testified:

"Mr. Little stood at the desk behind the door, that is the other desk I am speaking about; as I recall he spoke to me as I walked in, they were all waiting for me as I stated, as I recall Mr. Little said, 'Good morning, Uncle Charlie has something for you to sign or wanted to see you a minute' or something in that nature, as I stated before I brought my seal and I believe he said 'We don't want any papers notarized,' that is about what he said and Mr. Burgess said 'Kidd, I want you to witness my will.'

"That is all I recall: all I remember. As I recall the first I saw of the paper that I signed, Mr. Little went on to his desk back over here and as we entered he handed them to Mr. Burgess, and that is where the signing of the papers took place. Mr. Fontaine Little handed the papers to Mr. Burgess, he signed the first one and then Mr. Little handed him the other one. I don't recall that he said anything when he handed him the first paper. When he handed him the second one he said, 'We will want to keep

a copy' or 'Here is a copy' or words to that effect.

"You ask me if Little didn't say 'Uncle Charlie wants to divide up.' I don't remember him saying that, and I can't say to the court and the jury that I do. I would say I was possibly ten feet from Mr. Little at that time and I saw Mr. Burgess sign both of the wills. * * *

"I understood that Fontaine Little prepared these instruments, I heard he did, I didn't see him. I wasn't with him when they were prepared. Mr. Little told me he prepared them. He told me that Uncle Charlie had been after him for a day or so, and the night before he asked him especially to go ahead and draw up the paper and he told him he was busy and couldn't get to it, and that the next morning he reminded him of it and that he got busy and prepared them and called me and Bolton up to witness it. * * *

"Fontaine pulled the papers out of his pocket after the other gentlemen came in and he just said 'Uncle Charlie wants to divide up what he had' and wanted us to witness some papers for him. Fontaine said it was his will. Mr. Burgess was present and what he said in regard to the will was within the hearing of Mr. Burgess. Immediately after that we signed the paper. I will state to the jury and his Honor that I signed two papers."

Fontaine Little did not testify in the case.

## Assignment of Error No. 1.

"During the course of argument counsel for the defendants said in substance to the jury:

" 'Why didn't Fontaine Little take the stand and explain it; he was here on the summons within the reach of the court from the beginning to the conclusion of the trial, but he hasn't until yet appeared on that witness stand before you gentlemen in this case.'

"And to the aforesaid argument by counsel for defendant, counsel for plaintiff interposed an objection on the ground that it is an improper argument, that Fontaine Little was equally available as a witness to both parties; and that Fontaine Little is not a party to this suit; that no witness or anyone else should be criticized for not taking the stand; and it is an argument on the part of counsel solely for the purpose of prejudicing the minds of this jury."

While Fontaine Little was not a party to the proceeding, and not named in the will, his mother was the sole substantial beneficiary. There was evidence that he wrote the will and called the witnesses to his office where it was executed. He and the decedent and the two witnesses were the only persons present. On account of his relation to his mother, the sole substantial beneficiary in the will, he had an interest, though indirect, but perhaps very substantial, in probating the will. If he exerted undue influence on decedent and thereby procured the execution of the will for the benefit of his mother, it was material to the issues as made. He had peculiar knowledge of whether he did so. The defendants did not occupy that same relation to him as a witness that plaintiff did. Therefore the failure of the plaintiff to call him as a witness on the matters which were particularly known to him was a subject of legitimate comment by defendants' counsel.

Moreover, the record does not show what it was that defendants' counsel had been saying which he thought should have been explained by Fontaine Little. Appellant must show that the comment of counsel was not permissible under our rules. This whole question has been recently discussed by this Court and the rule made plain. The decisions of this Court had been confusing on that subject. But this opinion settles all such confusion. Waller ·v. State, 242 Ala. 1, 4 So.2d 911.

## Assignment of Error No. 2.

This is based on the refusal of charge 19. We will not inquire whether the record shows such a dispute. The plaintiff is not due to have certain features of the evidence thus emphasized, though they may not be disputed. 18 Alabama Digest 720, Trial, ⊗194(8). Moreover, it does not instruct them what bearing that status has on the issue as to the validity of the will, tending in its effect to mislead the jury on their verdict.

## Assignments of Error Nos. 3 and 4.

They are based on refused charges No. 20 and 21, which have the same legal status as the last statement above in discussing charge 19, supra.

## Assignment of Error No. 5.

This is based on ground No. 6 of the motion for a new trial, and is that the court erred in submitting to the jury the question of whether the alleged will was properly executed and witnessed. Its exe-

cution was denied and thereby made a ground of contest. The proof made of it was by witnesses testifying in court whose credibility was for the jury. It was properly submitted to them.

### Assignment of Error No. 6.

■ This relates to a charge given for contestants numbered 2. It merely informs the jury what it takes to constitute the due execution of a will, including its attestation. The objection urged is that this was misleading in that the execution of the instrument pursuant to legal requirements was proven without conflict. But it was nevertheless a matter within the issues and must be submitted to the jury who must determine the credibility of the proof.

### Assignments of Error Nos. 7 and 8.

■ These charges (given 3 and 4) are also statements of the law governing the execution of the will. They do not assert that the witness must have seen testator sign the will, but that they must have either seen him sign, or that he acknowledged to them that he did so. That is not an erroneous statement of the law. Woodcock v. McDonald, 30 Ala. 411; Code of 1940, Title 61, section 24(III).

### Assignments of Error Nos. 9, 11, 12 and 13.

■■ Refused charges No. 3, 5, 6, and 7 (record page 423), specifications No. 1, 2 and 3 in the assignments of contest, merely put in issue the due execution of the will. The burden was on proponent to make proof of such execution. Reynolds v. Massey, 219 Ala. 265 (9 and 10), 122 So. 29. These refused charges seem to imply that the burden in this respect is on contestant. Perhaps it was intended as another way of charging that this burden on proponent has been met. But it is obviously not in good form in so doing. The issue is not the sufficiency of the evidence to support those specifications, but the sufficiency to carry the burden imposed on proponent by them.

The burden being on proponent as to the due execution of the instrument, and the proof being made by witnesses (as it must be), the credibility of the witnesses must be hypothesized in asking a charge on the effect of such proof. This is not done in those charges.

### Assignment of Error No. 10.

■ Refused charge No. 4. This charge is so hypothesized, and calls for a charge on the effect of the evidence. Code of 1940, Title 7, sections 270, 273. But it directs a special finding by the jury as to the due execution of the will. There were other isues, notably undue influence and mental incapacity to make a will. It is as though there were several counts in a complaint. City of Birmingham v. Poole, 169 Ala. 177, 52 So. 937; Bessemer Liquor Co. v. Tillman, 139 Ala. 462, 36 So. 40, or there were several defenses tending to convey the idea to the jury that such a finding on that one question would result in a verdict for proponent. Peters v. State, 240 Ala. 531(20), 200 So. 404.

The correct form for the affirmative charge under such circumstances is set out in Barnett v. Freeman, 197 Ala. 142, 145, 72 So. 395.

### Assignment of Error No. 17.

■ This was a question by proponent to his witness Hansford whether he ever heard Mr. Burgess, the decedent, make any expression of affection toward his sister Mrs. Little, the principal beneficiary in the will. It is sufficient to say that though objection was sustained, the matter seems to have been fully stated by the witness. If there was anything else sought to be brought out, it was not so stated to the court.

■ Moreover, it was on re-direct examination of the witness, after proponent had concluded his direct examination and after the cross-examination had been finished, and was as to a matter not mentioned in either. It was therefore largely in the discretion of the court not to allow some new subject to be thus introduced. Mann v. State, 134 Ala. 1, 32 So. 704; Treadwell v. State, 168 Ala. 96, 53 So. 290; Peterson v. State, 227 Ala. 361(19), 150 So. 156.

### Assignment of Error No. 18.

■ The court sustained objection to a question by proponent to the witness Martin on the third cross-examination by proponent, whether he knew that decedent did not manifest the same affection for his other relatives as he did for Mrs. Little, the principal beneficiary. He had testified on one re-cross examination as to the nature of decedent's affection for and his relations with Mrs. Little. This witness was the proprietor of a sanitarium in Florence to which decedent was carried on the day he executed the alleged will. Fontaine and Mrs. Agnes Little carried him there, so he testi-

fied. This witness had testified with reference to Mrs. Hughes, a contestant and a niece of decedent, as follows: "You ask me if during the time he was an inmate in my sanitarium and when I say the Hughes' family visited him frequently, if they did or not appear to be on very friendly terms. I know nothing to the contrary about that, just as I know about Mrs. Little. To the best of my knowledge Mr. Burgess lived during the last three or four months of his life at the Hughes home. I saw him several times, and when he left my place he went to the Hughes home and stayed until he died. That is Mrs. Hughes home, and she is the mother of Tom and Charles. She lived on Wood Avenue in Florence, Wood Avenue and Jackson Highway. I saw him several times after he left my sanitarium and he said he was staying there."

The particular question mentioned in this assignment calls for an expression of opinion which we think invades the rule in that respect. A witness may testify as to the emotions manifested by another. Batson v. Batson, 217 Ala. 450(13), 117 So. 10; Thornton v. State, 113 Ala. 43, 21 So. 356, 59 Am. St.Rep. 97; Carney v. State, 79 Ala. 14; 69 A.L.R. 1168; 20 Am.Jur. 693, § 824. But we think a witness should not be permitted to make a comparison of the emotions of another between two other persons. The discussion in Carney v. State, supra, goes into the subject with much detail.

### Assignments of Error Nos. 19, 20, and 21.

These assignments relate to the ruling of the court whereby proponent was denied the right to testify that on the morning when decedent signed the will, he came into her room (which was on the same floor in the building where he had signed the will in the office of Fontaine Little), and said to her "here is my will," and handed it to her; also that her brother, decedent, brought it (the will) to her in his own hands (record page 279). Also the court sustained objection to the question to her as to what decedent said to her when the will was delivered to her. That was probably an effort to prove that he said to her "here is my will," referred to in previous rulings of the court.

The evidence was not incompetent under Code of 1940, Title 7, section 433. Alexander v. Alexander, 214 Ala. 291, 107 So. 835.

But so far as we can interpret the testimony of this witness as shown on pages 326 and 366 of the record, the court permitted her to give this proposed testimony in full.

### Assignment of Error No. 22.

This related to a question to proponent to state whether or not the name of decedent on the will is his signature (record page 327). The ruling was first made without the proposal to prove that she knew his handwriting, and that his name as it there appears was in his handwriting. It is this ruling which is assigned as error. The above proposal was then made with the same ruling and exception.

We know of no principle of law which supports the exclusion of evidence that she knew his handwriting, and that the signature was in his handwriting, Stuck v. Howard, 213 Ala. 184(6), 104 So. 500; Ritchey v. Jones, 210 Ala. 204, 97 So. 736; Allen v. Scruggs, 190 Ala. 654, 67 So. 301; but there is no assignment of error relating to the ruling made after the offer to prove that she knew the handwriting of testator. The ruling made before proponent offered that proof was without error.

### Assignment of Error No. 23.

The court sustained an objection to the question to proponent as a witness to state whether, on the occasion of decedent handing her the will on April 7th, he was drunk or in a state of intoxication or sober. There were no special grounds of objection stated.

In other parts of her testimony she seems to have answered this quite fully. (Record pages 278, 365 and 368.) Therefore no prejudice resulted.

### Assignment of Error No. 24.

Proponent did not on this occasion sufficiently apprise the court of the exact nature of the letters to which reference was here made to reverse on account of this ruling. This proof was not offered in connection with the offer to introduce the letters, nor was the court so advised in ruling on the inadmissibility of the evidence. Insofar as the court was informed, it was wholly irrelevant at the time it was offered.

### Assignments of Error Nos. 25 and 85.

Both assignments are based on the refusal of charge No. 51. While the principle of this charge was approved in

Stuck v. Howard, 213 Ala. 184, 104 So. 500(19); Massey v. Reynolds, 213 Ala. 178, 104 So. 494, it was repudiated in the subsequent appeal of the latter case (Reynolds v. Massey, 219 Ala. 265[14], 122 So. 29), when the question is whether the document was duly executed. It was said in that case that the rule may sometimes be applied when the construction of the will is in issue, and is affected by extrinsic facts, when usually the principle is an aid to the court in interpreting the instrument. It does not apply when its execution is the issue.

The charge here requested seems to seek to apply the principle when the chief question is one of undue influence or mental capacity. While the charge uses the word "validity" of the will, its validity on account of ambiguity in its terms is the sort to which the principle was said in the last appeal of the Massey case to apply. But its refusal should not reverse the case even when it could be given without error. It is argumentative and has a misleading tendency. It is also noted this charge in one place uses the word "validity" where it was probably intended for "invalidity." The court must act on a charge in the language as requested. Under no theory should there be a reversal for refusing this charge. Sometimes when it is properly expressed it is error to give it, as in the last appeal of Reynolds v. Massey, supra.

### Assignment of Error No. 26.

This is based on refused charge No. 52. The charge sought to invoke a principle of law asserted in Massey v. Reynolds, 213 Ala. 178, 104 So. 494(15). That case cites Ritchey v. Jones, 210 Ala. 204(7), 97 So. 736, which was not dealing with a charge asserting that the testimony of an attesting witness which tends to disprove the execution of the instrument which he witnessed should be considered with caution and suspicion, but his testimony should be weighed in the light of such implied contradiction. And as framed the court in that case held that it could be refused without error.

Whereas in the instant case, the jury is sought to be instructed that they should consider with great caution and suspicion such testimony. It is not the province of the court thus to infringe upon the prerogative of the jury. See, Canty v. State, 242 Ala. 589, 7 So.2d 292; Johnson v. State, 223

Ala. 332, 135 So. 592; Ragland v. State, 238 Ala. 587, 192 So. 498.

### Assignments of Error Nos. 27, 28, 29, 30, 95 and 31.

These are charges No. 5, 6, 12, 16 and 11, given for contestants. They do not misplace the burden of proof, nor are they erroneous to reversal, though some may be argumentative. But detailed discussion is not necessary.

### Assignments of Error Nos. 32 and 84.

These are based on refused charges 47 and 49. All that need be said as to these charges is that they call upon the court to charge the jury that there is no evidence of a stated fact. Their refusal is not reversible error. Pollard v. Williams, 238 Ala. 391 (15), 191 So. 225. Moreover, there was evidence of the facts hypothesized in those charges.

### Assignments of Error Nos. 37, 38 and 39.

These are based on refused charges 23, 25 and 27. They put the burden of proof as to undue influence on the contestants. This ignores any tendency of the evidence that confidential relations existed between decedent and his sister Mrs. Little acting by her son Fontaine Little in such relations, and his activity in writing the will and having it executed.

For, when so, the burden is cast on proponent of disproving undue influence, since she is a "favored beneficiary" in the will. Cook v. Morton, 241 Ala. 188, 1 So.2d 890; Kilgore v. Atkinson, 227 Ala. 310, 149 So. 808. The court in his oral charge clearly and correctly instructed the jury as to the meaning of undue influence and as to the party on whom is cast the burden of proof, and what is sufficient to meet that burden so as to shift to proponent the duty to disprove its use in this transaction.

### Assignment of Error No. 40.

Proponent as a witness on cross-examination had expressed her feelings of sadness for the others when she read the will. Counsel for contestants then asked her, in that connection, "You were sorry for the other relatives, weren't you?" This was legitimate cross-examination.

### Assignment of Error No. 41.

The court sustained objection of contestants to a question to a witness pro-

pounded by proponent on direct examination, with reference to decedent, "Did he carry on an intelligent conversation, Mr. Orman?" The witness had immediately before that testified that he considered his mind sound, was able to carry on ordinary business transactions; that his conversation was rational, and that he talked all right. The substance of the inquiry had therefore been fairly and fully stated by the witness, assuming that the question was proper and that an affirmative answer would be legal under the rules of this Court. Ritchey v. Jones, 210 Ala. 204(4), 97 So. 736; Burney v. Torrey, 100 Ala. 157, 172, 14 So. 685, 46 Am.St.Rep. 33; Houston v. Grigsby, 217 Ala. 506(14), 116 So. 686.

### Assignment of Error No. 42.

This was a question to a witness who was a secretary in the hospital in Memphis, where decedent was a patient immediately prior to April 1, 1939 (he executed the will April 7, 1939). She was not a nurse there so far as the evidence shows and did not have sufficient acquaintance or contact with him to form an enlightened opinion. Ritchey v. Jones, supra.

The question as to whether a non-expert witness was properly qualified to give such an opinion is in the sound discretion of the trial court, and will not be reversed unless plainly erroneous. Wear v. Wear, 200 Ala. 345(10 and 11), 76 So. 111.

### Assignments of Error Nos. 43 and 44.

Though objections to the questions on cross-examination to the witness Martin for contestants were sustained, the record shows that the witness gave explicit information as to what he knew in that connection, and such evidence was not excluded.

### Assignment of Error No. 45.

This relates to a question propounded by proponent to Judge Jere Murphy, a witness for proponent. The court sustained the objection. This witness was a son-in-law of Mrs. Little, the proponent. The substance of an affirmative answer appears in the testimony of this witness. He went into detailed recital of his acquaintance with decedent and his estimate of his mental capacity. This does not need to be done in any special form of words, though it may be competent to do it in that form.

### Assignment of Error No. 46.

Bolton was a subscribing witness to the execution of the will. It was executed in duplicate and both were attested by the same witnesses on the same occasion. Bolton testified that he saw the testator sign one of them, but his back was turned when he was presumably signing the other. He also testified that there was something wrong with him or he was intoxicated. Proponent put him up as a witness as he was bound to do. Not being satisfied with his testimony he proceeded to cross-examine the witness. The court allowed this procedure, and let it extend to statements made to counsel immediately before the trial began. When he was asked if in that conversation he was not asked whether Uncle Charlie (decedent) was drunk on that occasion. The question was answered one time. The court sustained objection to the second inquiry. (Record page 33.) The limit and extent of this form of examination is in the discretion of the trial court. Jefferson County Burial Society v. Curry, 237 Ala. 548(11), 187 So. 723; Linnehan v. State, 116 Ala. 471(7), 22 So. 662.

It appears from this feature of his examination that the court did not abuse his discretion.

### Assignment of Error No. 47.

This relates to a hypothetical question propounded to a witness for proponent on redirect examination. Objection by contestants was sustained. The witness was an expert and had given his testimony based upon personal contact with decedent extending to the first of April before the will was made April 7th. His acquaintance with him was while decedent was in a hospital in Memphis. On cross-examination he had been asked a hypothetical question by contestants, and the one here involved by proponent followed. It does not seem to us to hypothesize a situation which calls for an expert opinion. Proponent is not by doing so testing the expert knowledge of the witness, and it appears to be more in the nature of an argument than anything else.

### Assignment of Error No. 48.

The court sustained objection of contestants to a record made in the Memphis hospital and initialed by Dr. Schmid, who was on the staff of the hospital and an ex-

pert on mental diseases. Dr. Schmid had testified for contestants at much length expressing the opinion that decedent was of unsound mind September 4, 1936, when the record was dated, and that it was probably of a permanent sort. On direct-examination he exhibited a document of that date on the same form as was used in the Wallace hospital in Memphis, with which he was not connected at the time of the trial. He testified that he made it in his own handwriting. There is much information as to the decedent set down on this record. And near the conclusion are the words "with psychosis." This was shown to mean with mental disorder. On cross-examination his attention was called to that feature of it. He insisted that it was correct and should not be "without psychosis." But the hospital record was not shown him for explanation or other purpose; nor was he questioned about it. (See Record page 134.)

When Mrs. Caradine was testifying as a witness for proponent, she stated that on September 4, 1936, she was a secretary in the Wallace hospital and was doing such work for Dr. Schmid on that day, and on being shown a record from the files of the hospital dated September 4, 1936, she stated that she wrote it on the typewriter from shorthand notes dictated by Dr. Schmid. (Record pages 290–291.) It is strikingly like that produced by Dr. Schmid, but not the same document. At the place where his document had the words "with psychosis," the one she had contained the words "without psychosis." The court sustained the objection to this record offered by proponent.

Appellees insist that the paper introduced in evidence was only a copy of the original, and that was one ground of the objection. The evidence is not clear as to this. The instrument is not before this Court, and the trial court may have concluded that it was only a copy. We will assume for argument that it was the original.

There was certainly no statute prior to the Code of 1940, which makes records of hospitals admissible, nor which requires them to be kept except as to births and deaths. See, section 7674, Code of 1923, Code 1940, Tit. 7, § 386. This trial was not controlled by the Code of 1940, Title 7, section 415, since it was prior to the effective date of that Code. We need not here inquire whether that statute applies to hospital records.

The subject has had consideration in many cases with different results and with different reasons given for the result. The majority view is thus expressed in 26 Amer.Jur. 590, § 6: "In the absence of a statute requiring hospitals to keep clinical charts or records, many courts adopt the view that such a chart or record is admissible in evidence only under some exception to the hearsay rule, after a proper foundation is laid for bringing the case within the particular exception." That is a statement of the majority view expressed in 75 A.L.R. 378 and 120 A.L.R. 1124. In the case of Clayton v. Metropolitan Life Ins. Co., 96 Utah 331, 85 P.2d 819, 120 A.L.R. 1117, the question is quite fully discussed. Each case must witness such approach as its status justifies, considering the nature and purpose of the record as proposed evidence: the nature of the litigation and the relation of the parties in the cause to the question. Is it in the nature of an admission by a party to the cause? Is it in the nature of impeaching evidence? Is it for the purpose of aiding the memory of a witness in giving his testimony? Is it evidence of vital statistics? Is it to aid a physician in making treatment for the purpose of information to him? See Barfield v. South Highlands Infirmary, 191 Ala. 553, 68 So. 30, Ann.Cas.1916C, 1097. Or is it for the purpose of proving as original evidence the existence of a material disputed fact recited in it?

The instrument here was not shown Dr. Schmid as an aid to his memory, nor was he given an opportunity to explain it which was necessary when it is to be used as impeaching evidence. People's Shoe Co. v. Skally, 196 Ala. 349(12), 71 So. 719. He was not a party to the suit, making his admissions material, and its admission is not justified for any other purpose which we have seen discussed. Certainly it was not competent original evidence that Dr. Schmid diagnosed the patient as there stated.

### Assignment of Error No. 49.

This relates to a ruling of the court whereby he overruled objection to the testimony of Judge Jere Murphy, a son-in-law of the proponent, and a brother-in-law of Fontaine Little, that Fontaine Little told the witness that he wrote the will of decedent.

We have shown that the witness Kidd testified that on the occasion of the execu-

tion of the will Fontaine Little then and there, during that transaction, stated that he had himself prepared the will pursuant to the request of decedent, and had called the witnesses.

The testimony of the attesting witness Kidd as to this fact was not contradicted. Fontaine Little did not testify. This statement of Judge Murphy was merely cumulative of what was already in evidence without conflict or objection. Mrs. Little later testified that Fontaine told her that he wrote the will. Assuming that its admission cannot when introduced be sustained on any pertinent legal principle, we think that it could not have been prejudicial to appellant on the basis of her own testimony. (See Record page 366.) Supreme Court Rule 45.

### Assignments Nos. 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66 and 67.

There was evidence that in 1934, or later, decedent gave to proponent for safe keeping checks approximating $42,000, and that in 1937 she returned the money to him. That he then gave Fontaine Little $40,000 of it, and reported it as a gift under the federal gift tax law, as having been done October 25, 1937. There was much evidence in that connection over the objection of proponent, which is here assigned as error.

We think that it was material and competent to show the relations between the two men, affecting the question of undue influence also on the issue of testamentary capacity. On both issues the evidence may take a wide range.

### Assignment of Error No. 68.

Marshall Hester had testified that in his opinion decedent was a man of unsound mind, after predicate was made. A. L. Coleman was testifying for proponent, and had expressed the opinion that decedent was of sound mind. He was then asked if he knew the state of feeling between decedent and Marshall Hester. The court sustained the objection. But the witness testified that Mr. Burgess did not feel very good towards Mr. Hester. Proponent did not disclose what else he wished to prove in that connection, and that it would be competent evidence. When the question is material, it has been held that a witness may testify that one is at enmity with another. Carney v. State, 79 Ala. 14, 18. But proponent has not shown a prejudicial ruling in this connection.

### Assignments of Error Nos. 69 and 70.

Dr. Cocke, a mental specialist from Memphis, connected with the Wallace Sanitorium when decedent was there on two occasions (from November 30th to December 18, 1938, and from February 4, 1939 to April 1, 1939), testified for proponent of the mental soundness of decedent during those periods. The witness testified that he examined him and made diagnosis of his disease. He at first was not permitted by the court to answer whether decedent had any symptoms of cerebral arterial sclerosis, and that he had come under his observation almost daily. But after he testified that he made a diagnosis of his trouble, he did say that the patient manifested no symptoms of that disease. It was shown to be a condition tending to upset the mental status. On cross-examination, he testified that he generally saw all the patients every day, and saw Mr. Burgess nearly every day.

### Assignment of Error No. 71.

The question to the witness Gavin, made the basis of this assignment, was one which proponent had no positive legal right to have answered. He had already testified as there suggested. It is but a repetition, and so framed, and propounded as to have argumentative effect. It was not designed to bring out any evidence not already before the court by this witness. It was apparently asked to add emphasis to such evidence. There was no error to reverse in that connection.

### Assignment of Error No. 72.

This witness in the same connection gave full testimony about the matters so inquired about, though not in response to the question here mentioned. Appellant has no cause to complain of the ruling.

### Assignment of Error No. 73.

The question was one which did not come within the legal right of appellant. It used the word "retained," which the witness did not exactly understand. There was no effort to explain to the court what answer was expected nor how it would be material.

### Assignment of Error No. 74.

We see nothing in the evidence elicited by this question of which appel-

lant can complain. If after considering all the evidence in the case, especially in that connection, the fact that he requested to be permitted to pay his taxes by installments did not reflect upon his mental status, it did not injure proponent in respect to the issue.

Assignments of Error Nos. 75, 76, 77 and 91.

■ Refused charges No. 35, 36, 37 and 33. These relate to refused charges on testamentary capacity giving abstract definition of what is not regarded as incapacity in that regard.

The court had in his oral charge clearly and fully defined testamentary capacity, and cannot be held to a reversal for refusing charges defining it in other terms than those used in such oral charge.

Assignments of Error Nos. 78, 79 and 80.

■ Refused charges 42, 8 and 9. These charges are practically affirmative instructions on the ground of mental incapacity to make a will.

There was much evidence of such incapacity as to support a verdict so finding. To rehearse it would consume unnecessary time and space. The charges were refused without error.

Assignments of Error Nos. 33, 34, 35, 36, 81, 82, 83, and 90.

Refused charges 43, 44, 45, 46, 10, 11, 12 and 13. These are in effect the affirmative charges on the ground of undue influence.

There was much evidence to show confidential relations between decedent and Fontaine Little either on his own account or on his mother's, with Fontaine as the dominant party. In connection with this will and its execution Fontaine was acting directly and immediately in the interest of his mother (she said he was her agent) with his own interest in the background and as secondary. Without dispute he wrote the will and secured the presence of the attesting witnesses, and was present at its execution.

■ The principle seems to be settled that it is not necessary that he should have been the agent of his mother in doing so. If a will is procured by undue influence, it is not essential that the beneficiary participated in thus procuring it. If it is so procured, the animus testandi is absent, regardless of who may be the guilty

agent. Henry v. Hall, 106 Ala. 84, 95, 17 So. 187, 54 Am. St. Rep. 22; 28 R.C.L. 142, section 95, notes 9 and 10; Addis v. Grange, 358 Ill. 127, 192 N.E. 774, 96 A.L.R. 607, notes page 613.

■ If confidential relations existed between him and decedent, and he was active in writing the will or having it done, and executed, especially when in doing so he was acting for his mother by express or implied authority, or pursuant to a common understanding, and he was the dominant party in such relations with decedent, a presumption of undue influence is raised, though he was not directly the person specially favored by the will. Henry v. Hall, supra; Coghill v. Kennedy, 119 Ala. 641, 659, 24 So. 459.

Testator was old for his seventy-two years, had been an habitual drunkard for a long time and was suffering from its effects. He was a very large, heavy man with many peculiarities. He had given Fontaine $40,000, as some of the evidence showed, had two sisters, one brother (apparently), and the children of a deceased sister. After April 1, 1939, when he returned from the Memphis hospital, he lived in the Little apartment until he there signed the will prepared by Fontaine, and then went with him to a Florence sanitorium, and from there to the Hughes home (one of the contestants) in Florence where he spent several months. His home was in Russellville.

■■ It was a question for the jury as to whether Fontaine Little was in confidential relations with decedent, with Fontaine as the dominant party, and whether he was active in writing the will and procuring the attesting witnesses and was acting for his mother. In the event the jury found those to be the facts, the burden was cast upon proponent to refute the presumption of undue influence. That whole issue was properly left to the jury, who were carefully and correctly instructed as to the law on that subject.

Assignments of Error Nos. 86 and 87.

Refused charges No. "A.A." and "B.B.". These charges sought a special finding of the jury on each of the issues set out in them.

The question here is whether in such a case a special finding is a matter of right by the proponent. The issues made by the pleading were (1) want of the due execution of the will; (2) whether it was pro-

cured by undue influence exerted (a) by Mrs. Little or (b) by Fontaine Little or (c) by them jointly; (3) whether it was procured by fraud; (4) whether testator had testamentary capacity.

The court gave the affirmative charge for proponent on the issue of fraud, which was number 10 of the contest, and number 3 above. See proponent's given charge No. 14. (Record page 420.)

One of the questions in the requested charges as to testamentary capacity was whether Mr. Burgess was "insanely drunk and intoxicated, and in a stupor at the time he signed the will." That was one of the features of the ground numbered 10 or fraud. It was not made an issue in the charge of mental incapacity. The only grounds of contest in that connection were 4 and 5. They allege that Mr. Burgess was of unsound mind and did not have the mental capacity to execute a will. The proper response to that issue, if a special verdict on it was to be rendered, was not whether he was insanely drunk and intoxicated and in a stupor. The evidence justified a finding of testamentary incapacity, though at the very time of executing the will he may not have been in a drunken stupor. There was evidence of a more or less permanent mental incapacity produced probably by habitual drunkenness. The requirement in this connection did not respond to the issue. So that there was no need for a finding on the issue of fraud, and this feature of the request as to testamentary capacity did not call for a response to the issues made in that respect.

■ Moreover, as a general rule, the jury has the privilege or option to return a general or a special verdict and finding, and it is not in the province of the court to direct them in that matter. Foster v. Johnson, 70 Ala. 249. But there are circumstances, when it is proper in the orderly trial of a cause to have a special finding on some of the issues. That is true when by consent a plea in abatement is tried with one in bar, and the verdict is for defendant. The verdict should then specify the issue on which a finding for defendant is found. Milbra v. Sloss-Sheffield Steel & Iron Co., 182 Ala. 622, 62 So. 176, 46 L.R. A.,N.S., 274; All States Life Ins. Co. v. Jaudon, 230 Ala. 593, 162 So. 668. And under an old statute which did not require the same restrictions as to the execution of a will for personalty as it did for realty, and the issue related to such restrictions, it was held necessary to a proper judg-

ment on the effect of the will, to find the facts in that respect as to its execution. In one aspect it was good as to the personalty in it but not as to realty. Ex parte Edward Henry, 24 Ala. 638. And it is sometimes helpful to have a special finding when there are several defenses so as to determine whether certain rulings were prejudicial. State v. Brantley, 27 Ala. 44.

Appellant claims the benefit of this principle upon the authority of Johnston v. Johnston, 174 Ala. 220, 57 So. 450, to the effect that if Mr. Burgess was incapable of making a will he cannot be subject to undue influence. Burney v. Torrey, 100 Ala. 157, 14 So. 685, 46 Am.St.Rep. 33. In that case following a general verdict that the instrument was invalid, the jury also found that decedent was mentally incompetent to make the will. Upon that finding, this Court observed that the issue of undue influence was eliminated, and all rulings in respect to that issue were harmless.

■■ But that does not mean that the court must at the request of a party always require the jury to render a special verdict, when there are several inconsistent issues, unless so required by statute (Code of 1940, Title 15, § 424), as when a complaint has inconsistent counts and the statute requires a special finding (Code of 1940, Title 7, section 271). When an indictment has several inconsistent counts charging different offenses, a special verdict is not always necessary (Sampson v. State, 107 Ala. 76, 18 So. 207); nor in any case, civil or criminal, unless the issues are so set up that a general verdict may not be conclusive of the entire controversy, or may not be sufficiently informative to give full effect to legal requirements.

■ In this case the jury could return a general verdict for defendant on a favorable finding for her on any one of three issues (1) due execution, (2) mental incapacity, or (3) undue influence. If they found that the will was not duly executed, that eliminated the other issues and all rulings as to them. If they found that it was duly executed, but that Mr. Burgess did not have testamentary capacity, that eliminated undue influence and rulings as to that issue. And while they need not consider undue influence unless the will was duly executed and Mr. Burgess had testamentary capacity, a special finding as to the former two issues was not necessary for the verdict and judgment to be res adjudicata on all the issues thus made, or to give such judgment proper force and direction, for a gen-

eral finding for defendant and judgment accordingly was conclusive that the will was not due to be probated, and no special information was needed for any purpose. That alone was the one ultimate purpose of the contest, and settled the entire controversy. A special finding on any of the issues was unimportant to appellant.

### Assignments of Error Nos. 88 and 89.

Refused charges "C.C." and "D.D.". These are refused charges which instruct the jury that there is no sufficient evidence of fiduciary relations between Mr. Burgess and Mrs. Little in one charge, and between him and Fontaine Little in the other. They are not in the nature of the affirmative charge on any ground of the contest. The existence of confidential relations was not a ground of the contest, but only a contested matter of fact which was material on the issue of undue influence. As we have observed, we have many cases which hold that the court will not be required to charge the jury that there is no evidence of such a fact. See, 18 Alabama Digest 720, Trial, ⊗194 (8). Moreover, there are tendencies of the evidence from which such relations may be inferred by the jury.

### Assignment of Error No. 92.

Refused charge No. 48. The affirmative charge was given for proponent on the ground of contest charging fraud. See given charge No. 14, page 420 of the record. There was no error therefore in refusing this one.

### Assignments of Error Nos. 93 and 94.

Given charges No. 10 and 11. These charges given for defendant are obviously not unsound statements of the law on principles settled by the authorities which we have cited and discussed. There was no reversible error in giving any of them.

Assignment of error No. 95 is the same as assignment No. 30.

### Assignment of Error No. 96.

This relates to the judgment overruling the motion for a new trial. Insofar as the same is based on the rulings we have discussed, error depends upon the reasoning in our discussion. There was sharp conflict in the evidence on some of the issues. The verdict on those issues should not be disturbed on the ground that it is contrary to the great weight of the evidence.

Counsel make some reference to assignment of error No. 97, but we cannot find an assignment so numbered.

Affirmed.

GARDNER, C. J., and BOULDIN and LIVINGSTON, JJ., concur.