286 So.2d 909

**Harold WALLIS**

**v.**

**STATE.**

**6 Div. 466.**

Court of Criminal Appeals of Alabama.

Sept. 25, 1973.

Rehearing Denied Oct. 30, 1973.

**500**

———◆———

Robert M. Cleere, Russellville, John D. Prince, Jr., Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Don C. Dickert, Asst. Atty. Gen., for the State.

W. J. HARALSON, Supernumerary Circuit Judge

The appellant was convicted of an assault with a deadly weapon upon a police officer of the City of Jasper, Alabama, § 374(20), Title 14, Code of Alabama 1940, Recompiled 1958, and sentenced to seven years imprisonment in the penitentiary.

The substance of the evidence offered by the State is correctly set out in the statement of facts in brief for the Appellee as follows:

"On Saturday, September 18, 1971, at approximately 1:20 A.M. officers Capps, McClellan and Britain were in the radio room of the Jasper Police Station when they heard two gun shots. Officer McClellan looked out the window and saw a red and white car which he recognized as belonging to Appellant Wallis. McClellan went outside and observed Appellant sitting in his car with the door open and one foot on the street and a gun in his hand. The officer drew his service revolver, walked up to the car and asked 'what in the hell do you think you're doing?' Wallis pulled the door closed and drove away at a high rate of speed. Officer McCellan went back into the police station and got officer Capps and they noticed the smell of gunpowder as they went to their police cruiser.

"The two officers drove to Appellant's body shop where they saw him standing in the door. Wallis called out obscenities at the officers saying among other things 'Come on in, come on in, you son-of-a-bith (sic) you're looking for something, come on in here and you'll get it.' Appellant had a pistol in his belt at this time.

"The officers drove back to the City Hall to check the building for bullet

holes. Then they drove back toward Appellant's garage and stopped at a Gulf Service Station nearby. Wallis was pacing back and forth in front of his doorway waving his arms and hollering. At one time he came to the door and threw a soft drink bottle into the street breaking it. During this time the officers could see a pistol stuck in his pants with the butt showing above his belt. Appellant Wallis walked back into the building and the officers heard two shots. Officer Capps testified that Wallis then walked back to the door with the pistol in his hand and 'began to move his arm in a motion that appeared like he was going to fire the gun at us.' Wallis did that several times. Then he got behind the door and appeared to be taking aim several times. He fired twice in the direction of the officers.

"Officer McClellan returned the fire with a riot gun. Wallis fired at the officers a total of four times. The police started moving toward the building and Wallis put his hands up in the air and ran to his car which was parked in the garage locking himself inside. After a short time the officers were able to get a door to the automobile open with a screwdriver and take Wallis to jail." (We add thereto that the evidence indicates that the appellant had been drinking, which was admitted also in appellant's own testimony.)

In appellant's testimony he denies that he was near the City Hall on the night of this occurrence and that he fired any pistol in that vicinity. He testified that the officers, McClellan and Capps, appeared in the vicinity of his place of business on the night in question and fired a weapon of some kind one or more times at him as he was standing in or near the doorway to his establishment. Only then did he return the fire, at which time he went into his body shop, and locked himself inside his automobile. He further testified that he was later forcibly removed from his automobile and arrested by the officers.

Before entering upon the trial, the appellant filed motions to prevent the trial judge and the district attorney from participating in the trial of the case at bar on the ground that they were biased towards him, and that he could not receive a fair trial under the circumstances. Before the main trial, a preliminary hearing on the two motions was held. After hearing the evidence offered in support of the motions, the court overruled as to each, and the case proceeded to trial.

Title 13, § 6, Code of Alabama 1940, Recompiled 1958, dealing with the statutory grounds for disqualification of a trial judge reads as follows:

"No judge of any court, county commissioner, or justice, must sit in any cause or proceeding in which he is interested, or related to either party within the fourth degree of consanguinity or affinity, or in which he has been of counsel, or in which is called in question the validity of any judgment or judicial proceeding in which he was of counsel, or the validity or construction of any instrument or paper prepared or signed by him as counsel or attorney, without the consent of the parties entered of record, or put in writing, if the court is not of record."

It has been further held that the statutory grounds for disqualification of a judge are not exclusory of the disqualifications existing under the common law. Shell v. Shell, 48 Ala.App. 668, 267 So.2d 461, cert. denied 289 Ala. 751, 267 So.2d 467. This case further holds prejudice or bias to be a ground for disqualification.

*Shell,* supra, seems to be the latest pronouncement on this subject, although some of the old cases seem to hold that bias was not a ground for disqualification at common law.

The grounds which would disqualify a judge would also disqualify a district attorney from prosecuting the case.

We have carefully considered the testimony offered by appellant on the hearing of the two motions. Much of the testimony of the feeling of the appellant seems to be based on hearsay and upon his being involved in the municipal or criminal courts in a series of cases, some tried by the presiding judge in the case at bar and others by other judges whom he also feels are disqualified. The motions themselves seem to be partly based upon an alleged belief that the appellant would be penalized in the courts for political activities (against the "power structure" in Walker County). It further appears that at one time he was fined for contempt of court by the trial judge and at another time engaged in a violent argument with the district attorney at a meeting held at appellant's request with the trial judge and district attorney, to attempt to straighten out some legal difficulties. This court sees no reason why the action of the trial court in overruling the motion to disqualify himself and the district attorney should be disturbed by this court. This conclusion is fortified by the attitude of the court and the district attorney during the trial in the main case at which time it appears that every opportunity was afforded the appellant for a fair trial. Several motions for a mistrial were made by the appellant based upon special events preliminary to the trial of this case, none of which are well taken, and none of which resulted in injury to the rights of appellant. At the conclusion of the testimony, the court also overruled along with the above mentioned motions, a general motion to exclude all of the evidence. There was no error in the action of the court in overruling these motions.

During the direct examination of defense witness, Parvin, he was asked by appellant the following question:

"Do you know if there is ill will or good will between Sergeant McClellan and Harold Wallis?"

The State objected to the question, and the court sustained the objection on the ground that the answer would call for a mental conclusion. We think the Court's action in this respect was error.

In Peinhardt v. State, 37 Ala.App. 693, 76 So.2d 176, cert. denied 262 Ala. 10, 76 So.2d 179, the Court of Appeals held that the trial court erred in sustaining objection to the following question:

"Q. Mr. Tucker, you know and you are aware of the fact that the state of feeling between Sheriff and Fred Peinhardt is not good, is that correct?"

The court in this holding relied upon the cases of Lodge v. State, 122 Ala. 97, 26 So. 210, and Bennefield v. State, 134 Ala. 157, 32 So. 717. This court in *Peinhardt*, supra, speaking through Judge Harwood, seemed to doubt the wisdom of this holding but followed the rule as laid down by the Supreme Court in the above cited cases as this court is bound to do.

Upon certiorari, the Supreme Court, in an opinion by Justice Stakely said:

"The petition for certiorari filed by the State is based solely on the ruling of the Court of Appeals with reference to the sustaining by the trial court of objections to the question propounded to the State's witness, Tucker, as follows:

"'Q. Mr. Tucker, you know and you are aware of the fact that the state of feeling between Sheriff and Fred Peinhardt is not good, is that correct?'

"Upon a consideration of the matter we have concluded that the cases of Lodge v. State, 122 Ala. 97, 26 So. 210 and Bennefield v. State, 134 Ala. 157, 32 So. 717, cited in the opinion of the Court of Appeals, sustain the conclusion reached by the Court of Appeals. We see no reason to overrule those cases and furthermore we see no reason to refer to the line of cases in this state which hold that a witness may not answer as to the uncommunicated intent of another. The question in the case at bar seeks to show

the emotional state of the sheriff toward the defendant.

"In Little v. Sugg, 243 Ala. 196, 8 So.2d 866, 876, it was said that, 'A witness may testify as to the emotions manifested by another.' In Pollard v. Rogers, 234 Ala. 92, 173 So. 881, 885, in showing that proof of emotions may be made, the words of Judge Stone were quoted as follows:

" 'The prevailing rule to be applied to such inquiries has long since been announced by Judge Stone in South & North Ala. Railroad Co. v. McLendon (1879) 63 Ala. 266, 276, who said: 'The true line of distinction is this: an inference, *necessarily involving certain facts, may be stated without the facts,* the inference being an equivalent of a specification of the facts: * * * In other words, when the opinion is the mere short-hand rendering of the facts, then the opinion can be given, subject to cross-examination as to the facts on which it is based.' Whar.Ev. § 510. (Italics supplied.)"

"The result is that the writ must be denied."

It appears to us that under the authority of *Peinhardt* supra, and the cases cited therein, that the action of the court in the case at bar in sustaining the State's objection to the question was reversible error.

Many questions besides those dealt with, were argued in appellant's brief. Many were without merit, others likely will not arise upon another trial of this case, and we see no good purpose in prolonging this opinion.

For the error pointed out the case is reversed and remanded.

The foregoing opinion was prepared by Honorable W. J. HARALSON, Supernumerary Circuit Judge, serving as a Judge of this Court under Section 2 of Act. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Reversed and remanded.

All Judges concur.