153 So. 240

**GREEN et al. v. DAVIS.**

8 Div. 554.

Supreme Court of Alabama.
March 1, 1934.

Brickell & Johnston and Taylor, Richardson & Sparkman, all of Huntsville, for appellee.

Watts & White, of Huntsville, for appellants.

BROWN, Justice.

This appeal is from the judgment of the circuit court entered on the verdict of a jury sustaining the validity of the alleged last will and testament of Allen J. Green, deceased, on a contest instituted by the appellants as his next of kin and heirs at law.

The contest was rested on the grounds, among others, (1) that the will was not signed by the alleged testator in the presence of the subscribing witnesses, nor his signature thereto acknowledged to both of said witnesses;

(2) that the witnesses did not subscribe in the presence of the testator.

The evidence is without dispute that on the occasion of the alleged execution of said alleged will, Green came to a point near the Henderson National Bank, located on the northeast corner of the Public Square at the intersection of Washington and Randolph streets in the city of Huntsville. Washington street leads north and south and Randolph east and west. The front door of the bank sets at an angle facing the corner of the square. The automobile was parked somewhere in the parking space on Randolph street south of the bank building. After the automobile was parked, Green sent his chauffeur into the bank to request Mr. Stobaugh to come out to the automobile, and when Stobaugh came out, Green, who was a cripple, was on the back seat of the automobile, to use the language of the witness, "was slumped back in the car," and remained there during the alleged subscription of the alleged will by Stobaugh and Humphrey. Green was a customer of the bank, Stobaugh was its cashier, and Mr. Humphrey a vice president. When Stobaugh came out to the car at Green's request, through the chauffeur, Green handed him the paper inclosed in an envelope, and told him that was his will, and requested Stobaugh to sign as a subscribing witness and get Mr. Humphrey, or, according to one phase of the evidence, some one else to sign with him; that Green's signature was on the paper when delivered to Stobaugh; that Stobaugh took the paper and went back into the bank, went inside the working space—behind the fixtures; placed the alleged will on his desk and signed, and then carried it to Humphrey and told him of Green's request, and Humphrey subscribed the same.

The evidence is also without dispute that Humphrey did not see Green on the occasion and had no communication with him, and that all he knew about Green's presence in the car on Randolph street was what Stobaugh told him. The names of the witnesses appear on the alleged will under the word "Witnesses." That on the side of the bank next to Randolph street there is a large glass window fifteen to eighteen feet in length—by exact measurements as appear from the diagram fifteen feet, four inches; that about twelve feet of the parking space on Randolph street are visible to persons in the bank through the window; that the desk where Stobaugh signed the alleged will as a witness was twenty or more feet from the curbing of the Randolph street sidewalk.

Green's chauffeur testified: "I parked the car on the side of the bank, up next to the curb. I know where the big plate glass window is located on the south side of the bank. We were not parked exactly even with the window. We parked back of the window, that is, East of the window. The brick wall was on our right when I parked the car. Captain Green did not go into the bank but remained in the car the entire time."

The provisions of the statute applicable are, that "no will is effectual to pass real or personal property, * * * unless the same is in writing signed by the testator * * * and attested by at least two witnesses, who must subscribe their names thereto *in the presence of the testator*." Code of 1923, § 10598. (Italics supplied.)

■ While the statute does not in terms require that the testator sign in the presence of the subscribing witnesses, "the uniform construction and application of the statute, Code of 1923, § 10598, by the decisions here, is that, *to constitute an efficacious attestation of a will*, what is intended by the testator to operate as a signing by him, in completion of the document whether written in its face by the testator or some person in his presence, and by his direction, or affixed at the foot thereof by mere mark or subscription, must either be done in the presence of the subscribing witnesses, or to them acknowledged as his act, by expressed words or necessary implication from his conduct, at the time of its attestation and subscription by the witnesses. Armstrong's Ex'r v. Armstrong's Heirs, 29 Ala. 538; Barnewall v. Murrell, 108 Ala. 366, 18 So. 831; Goldsmith v. Gates et al., 205 Ala. 632, 88 So. 861; Elston v. Price, 210 Ala. 579, 98 So. 573; Woodruff v. Hundley, 127 Ala. 640, 29 So. 98, 85 Am. St. Rep. 145." Reynolds et al. v. Massey et al., 219 Ala. 265, 270, 122 So. 29, 34.

■ Though it be conceded that the circumstances disclosed by the evidence presented a question for jury decision, whether or not the alleged testator Green, by implication, acknowledged to Humphrey that the signature to the will was his, a question of serious doubt, we are clear to the conclusion that the witnesses did not subscribe their names thereto in the presence of the testator as required by the statute. It was not only essential that the testator could, if he desired, see the witnesses when they subscribed their names to the document, but he must be able to see the document itself.

No better statement of the rule can be found than in Hill .v. Barge, 12 Ala. 687, 696, where

it was observed: "The design of the statute, in requiring the attestation to be made in the presence of the testator, was to prevent the ·substitution of a surreptitious will. In the *presence* of the testator, therefore, is within his view. He must be able to see the witnesses *attest the will*, or to speak with more precision, their relative position to him, at the time they are subscribing their names as witnesses, must be such, that he may see them if he thinks proper to do so, and satisfy himself by ocular demonstration, *that they are witnessing the very paper* he designed to be his last will. They may subscribe their names in the same room with the testator, and yet there may be such a physical barrier, or obstruction, between him, and them, that he could not see what they were doing, and although in the same room with the testator, would not be in his presence, within the meaning, and intention of the statute. Neil v. Neil, 1 Leigh [28 Va.] 6. So also it has been held, that when the testator desired the witnesses to go in another room and attest his will, in which there was a window broken, through which he might see them, it was held, the will was well attested." (Italics supplied.) See extensive note L. R. A. 1916C, pages 951–964.

We reproduce the opinion of Lord Ellenborough, C. J., in Doe, etc., v. Manifold, 1 Maule & Selwyn, pages 294 [296], referred to in the above-cited case of Hill v. Barge: "It is not necessary that a devisor should actually see; but the question is, whether he must not be in such a situation that he might see the witnesses attest. I am old enough to remember the decision of Casson v. Dade [1 Bro. C. C. 99] upon that point, and afterwards went to view the office, through the window of which it was proved that the testatrix, who sat in her carriage when the will was attested in the office, might have seen what was passing there. In favour of attestation it is presumed that if the testator might see, he did see. But I am afraid that if we get beyond the rule which requires that the witnesses should be actually within the reach of the organs of sight, we shall be giving effect to an attestation out of the devisor's presence; as to which the rule is, that where the devisor cannot by possibility *see the act doing*, that is out of his presence. If the jury had not negatived the testator's being in a situation that he might have seen the attestation, I should have had great doubts on this case." (Italics supplied.)

The facts in Casson v. Dade, 1 Brown, Ch. page 98, were: "Honora Jenkins having a power, though covert, to make a writing in the nature of a will, ordered the will to be pre-

pared, and went to her attorney's office to execute it. Being asthmatical, and the office very hot, she retired to her carriage to execute the will, the witnesses attending her; after having seen the execution, they returned into the office to attest it, and the carriage was accidentally put back to the window of the office, through which, *it was sworn by a person in the carriage, the testatrix might see what passed.*" (Italics supplied.)

■ There is no evidence in this case showing, or tending to show, that a person seated in the automobile where Green remained during the entire time could even see the witnesses, much less their acts of subscribing their names to the alleged will. In fact, Stobaugh's testimony is conclusive to the effect that he placed the paper on his desk and that the marble wall of the bank fixtures extending above the desk six or eight inches, excluded even a bare possibility that Green could have observed his act of subscribing his name to the paper. When his testimony is considered in connection with· that of Sam Acklin, the chauffeur—as his testimony is not contradicted—showing that the car was parked where the brick wall excluded Green's view, there is not the least doubt that Green did not see and could not see the act of attestation by either Stobaugh or Humphrey. The testimony of Stobaugh and Humphrey, that they, from their respective desks behind the bank fixtures, could see the sidewalk, curbing, and cars parked in the parking space, does not authorize an inference that a person on the outside in a car could see what was taking place at said desks. It is a matter of common knowledge that it is more difficult in daytime for a person on the outside of a building to see what is taking place on the inside, than for a person on the inside to observe occurrences on the outside.

In Massey et al. v. Reynolds et al., 213 Ala. 178, 104 So. 494, and Stuck v. Howard, 213 Ala. 184, 104 So. 500, the question at issue was whether or not the testator signed in the presence of the subscribing witnesses, or whether his signature was or was not on the paper when presented to them for attestation. In both of these cases the subscribing witnesses were produced and testified *that they were called to attest the will and that they subscribed their names in the presence of the testator*, but that they saw no writing, not even the signature of the testator, on the paper and none was called to their attention; that if his signature had been on the paper, they could have seen it. In these circumstances it was held that the alleged will,

which appeared on its face to be duly executed and witnessed, was admissible in evidence to contradict or impeach the testimony of the subscribing witnesses going to show that the will was not signed by the testator when they subscribed their names thereto. That holding is not apt here. In the first place, the issue is different, and, in the second place, the predicate is not sufficient.

Our judgment is that the proponent has failed to meet and carry the burden of proof resting upon him, and that the contestants were due the general affirmative charge which they requested in writing.

Appellee, in insisting that the record does not show that the affirmative charge was duly requested and refused, on the authority of Stinson v. State, 223 Ala. 327, 135 So. 571, has undoubtedly overlooked the fact that this is shown by the bill of exceptions and the record proper, which contains not merely the recital of the clerk, but the indorsement of the presiding judge.

For the error noted, the judgment is reversed and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.