37 So.2d 923

### THIGPEN v. WALKER.

#### 4 Div. 504.

Supreme Court of Alabama.

Dec. 16, 1948.

H. A. Ferrell, of Phenix City, and Jacob A. Walker, of Opelika, for appellee.

A. L. Patterson, of Phenix City, for appellant.

BROWN, Justice.

This appeal is from the judgment of the circuit court entered on the verdict of the jury in the matter of the contest of the will of Marcus A. Thigpen, deceased, propounded for probate in the Probate Court of Russell County and contested by O. C. Thigpen, named in the petition for probate as an heir at law and next of kin, who, after notice issued to and served upon him, appeared and filed six pleas stating sundry grounds on which he contested the existence and validity of the paper propounded for probate. Mindler v. Crocker, 245 Ala. 578, 18 So. 278; Coghill v. Kennedy, 119 Ala. 641, 24 So. 459. Said pleas in short aver that the paper named in the petition for probate is not the last will and testament of said Marcus A. Thigpen; that the execution of said purported will was the result of undue influence exerted upon said testator by the proponent and alleged legatee; that said testator was induced to sign and did sign said will by mistake, thinking he was signing some other paper. On motion of the defendant the matter of said contest, after filing said pleas, was transferred to the circuit court under the provisions of § 63, Title 61, Code of 1940, and trial by jury was demanded by the defendant, resulting in the following verdict: "We, the jury, find for the will."

Demurrers were not filed to said pleas and the minute entry recites: "Issue being joined, thereupon came a jury of twelve good and lawful men," etc. At the conclusion of the court's oral charge and before the jury retired, the defendant requested the following charge in writing:

"I further charge you gentlemen of the jury that if you believe the evidence in this case you will find for the contestant," which was refused and so endorsed by the presiding judge. The court in the oral charge instructed the jury in part:

"This is not a difficult case. You have heard all the testimony; is *this* the last will and testament of Marcus Thigpen? Was he sane at the time of its execution? Was he acting under the undue influence of G. P. Walker at the time he made the will?

These are the principal matters for your consideration and I charge you that if you find from the evidence that Marcus Thigpen was of sound mind at the time *he signed the will* and that no undue influence was exerted over him then you must find for the proponent of the will and the form of your verdict would be, 'we the jury find in favor of the will.' If the contestant has satisfied you by a *preponderance* of evidence that undue influence was exerted in the making of said will then the contestant is entitled to prevail and the form of your verdict would be, 'we the jury find against the will.' * *. *." [Italics supplied.]

The defendant after verdict rendered made timely motion for new trial which was overruled and the judgment entry overruling the motion recites, "*and contestant excepted.*" [Italics supplied.]

On the trial the alleged subscribing witnesses were examined and the alleged will was exhibited to them during their examination in the presence of the jury and they testified that said Marcus Thigpen subscribed the same and that they attested his signature thereto at his request. The attesting witnesses, Oscar Cochran and his brother E. A. Cochran, testified that they were present when Marcus Thigpen signed said paper. That they were all three present at the place where the paper was signed. Oscar Cochran testified that the paper was undated and that he filled in the date "January 30, 1942." The other witness testified that while he was present he didn't remember seeing that done but it might have occurred. That at the time Marcus Thigpen signed the paper in their judgment he was of sound mind and disposing memory. That Thigpen died in January, 1947, and that said paper was made five years before his death. On cross-examination they testified that they did not know who prepared the paper. The fact was developed on cross-examination that on the same day they signed as attesting witnesses to said paper, they also witnessed the signature of said Thigpen to two other documents of the same date. One, in substance, an agreement between the alleged testator and G. P. Walker, the proponent, whereby Walker employed Thigpen as an overseer to serve as an agricultural agent "on that certain

plantation in Russell County, Alabama,— also at my home place containing about 25 acres known as the M. A. Thigpen Place consisting of 560 acres, from the 1st day of February, 1942, to the 31st day of December, 1942; and the said Marcus A. Thigpen agrees that he shall be subject to the orders and regulations of the said G. P. Walker, or his agent, for the management and superintendence of said farm; that he will take good and faithful care of all utensils, implements, wagons, horses, mules and other property committed to his care as agent on said plantation, and be responsible for all loss of or damage thereto, reasonable wear and tear excepted." The words "also at my home place containing about 25 acres" and other interlineations appeared on the face of said paper. Listed in said paper was a lot of personal property consisting of 1 two horse wagon, mules, cattle, trucks, tools and farming implements, also corn, hay, peas, and cotton seed to the value of $150, following which is a declaration that, "This agreement is to cover any future purchases by G. P. Walker of live stock, cattle, farm implements and any other articles necessary to carry on this farm, all of which are to be held by Marcus A. Thigpen in trust for account of G. P. Walker."

The other document purports to be signed by Marcus A. Thigpen and witnessed by the alleged subscribing witnesses to the paper propounded for probate recites a consideration of $735 and other "good and valuable considerations not herein mentioned" and states that "I, Marcus A. Thigpen, do hereby grant, bargain, sell and convey unto the said G. P. Walker the following personal property, to wit: 1 two horse wagon; 1 black mare—10 years old; 1 black mare mule—10 years old; 21 head. of cows and calves, being all the cows and calves that I now own; I 1935 model ford truck; 1 ford pick-up truck; all plow tools and farm implements; corn, hay, peas, cottonseed. It being my intention to convey all of the personal property that I now own to G. P. Walker, whether herein accurately described or not; which said property is located at Uchee, Russell County, Alabama."

The last two mentioned papers were filed for record in the office of the Judge of Probate of Russell County on the 20th day of February, 1942, and recorded therein and were in possession of the proponent and produced on the trial by him on notice given by the defendant. The evidence also shows that the alleged will was in possession of the plaintiff up until he filed the petition in the probate court and that it was also filed for record in the probate office in January, 1947. So far as appears in this record, the paper, the subject matter of the controversy between the parties, was not presented to the court during the trial, nor was it introduced in evidence or made a part of the evidence in the case, transcript of which is certified by the reporter to contain all the evidence offered on the trial. The other two documents were offered in evidence and made a part of the record. These documents, together with the testimony of the plaintiff who without objection was allowed to testify to the transactions with the decedent, go to show that confidential relations existed between plaintiff and Thigpen at the time the alleged will was signed. There was also evidence going to show that Thigpen was old and afflicted and his eyes necessitated the use of glasses to enable him to read and write.

Appellee contends that under the statutes (§§ 52 and 63, Title 61, Code of 1940), the trial court on such trial may ignore the pleadings filed by the parties and make up the issues to be tried and submitted to the jury in the court's oral charge. That the excerpt heretofore quoted from the oral charge constituted such issues as made up by the court. Section 52, Title 61, Code of 1940, provides: "A will, before the probate thereof, may be contested by any person interested therein, or by any person, who, if the testator had died intestate, would have been an heir or distributee of his estate by filing in the court where it is offered for probate allegations in writing that the will was not duly executed, or of the unsoundness of mind of the testator, or of any other valid objections thereto; and thereupon an issue must be made up, under the direction of the court, between the person making the application, as plaintiff, and the person contesting the validity of

the will, as defendant; and such issue must, on application of either party, be tried by a jury."

Section 63, Title 61, Code of 1940, authorizing the removal of the contest to the circuit court provides: " * * * The issues must be made up in the circuit court as if the trial were to be had in the probate. court, and the trial had in all other respects as trials in other civil cases in the circuit court. * * * "

In Mindler v. Crocker, 245 Ala. 578, 18 So.2d 278, 279, it was observed:

" * * * The issue should be made up under the direction of the court on proper pleas specified in the contest as directed in section 52, Title 61, Code of 1940. The only two pleas which went to the jury and which were not objectionable were numbers 5 and 6, denying the execution of the will, and there was no contention on the trial that the evidence was insufficient as to the legal formality in the execution of the will.

" * * * Parties to a cause are entitled to know in advance of trial what issues are to be met. * * * "

This holding, construing and applying these statutes, clearly reaffirmed the settled rule of procedure established in this state and elsewhere that, "The questions in dispute between the parties are to be ascertained from an examination of the pleadings and the evidence in support thereof. * * * ." 57 Am.Jur. p. 612, § 929. The quoted text is rested upon Hamill v. Hamill, 162 Md. 159, 159 A. 247, 82 A.L.R. 878, and fully coincides with the holding of this court in Coghill v. Kennedy, 119 Ala. 641, 24 So. 459.

It is also settled that in the trial of the issues of the contest certified out of the probate court to the circuit court under § 63, supra, that the jurisdiction conferred on the circuit court is statutory and limited, and to warrant the exercise of that jurisdiction there must be pending in the probate court a valid contest when the probate court or the judge thereof enters the order transferring the contest to the circuit court. Ex parte Pearson, 241 Ala. 467, 3 So.2d 5.

While it is well settled that the proceeding in the probate court to probate a will is in rem, it is clear from the provisions of the statute authorizing the removal of a contest to the circuit court, a court of law, that the proceedings in that court are inter partes and in personam to be tried and disposed of as other civil actions at law. Oliver v. Kinney, 173 Ala. 593, 56 So. 203.

In the case of Cavarno v. Webb, 239 Ala. 671, 196 So. 723, 724, the court was dealing with a bill in equity filed under Code of 1923, § 10637, now § 64, Title 61, Code of 1940, authorizing the contest of a will after probate by bill in equity, wherein it was held that the proceedings were inter partes. The court observed: "Analogy appears in our present statute for the transfer of contest proceedings in the probate court to the circuit court for trial, the result to be certified to the Probate Court." Code of 1923, § 10636.

The jurisdiction and authority of the circuit court is limited to the trial of the issues presented by the contest after which the case must be certified back to the probate court. § 64 supra. On the trial of the contest whether or not the paper tendered for probate is of testamentary character ordinarily is a question of law to be determined by inspection of the document by the court. But if it appears on the face of the instrument that the animo testandi is ambiguous or obscure, the question is ordinarily submitted to the jury for determination. If the evidence is conflicting, the question of whether or not the instrument propounded for probate was executed or attested in the manner prescribed by law is a question of fact to be determined by the jury, under proper instructions of the court. The credibility of the witnesses and the weight to be given particular testimony in a case in which the evidence as a whole warrants the submission of the issue to the jury are questions of fact to be determined by the jury. 57 Am.Jur. p. 610, § 927.

Under the evidence in this case the question as to whether the testator at the time the paper was signed by the attesting witnesses was in a position where he could see such attestation is left to inference to be drawn by the jury from the fact that the witnesses testified that the testator was present at the time and place of the attestation and it was incumbent on the plaintiff

to reasonably satisfy the jury that the act of the witnesses in attesting was within the scope of the testator's vision. Hill v. Barge, 12 Ala. 687; Green v. Davis, 228 Ala. 162, 153 So. 240. The evidence in this case is clearly without dispute that confidential relations existed between the alleged testator and the proponent who the evidence goes to show was the sole legatee; that he was not related in any way to the alleged testator, except as an employer and friend, and the evidence, without dispute further shows that the testator had expressed the desire that he wanted one of his nephews, naming him, to have his home place, if he wanted it. There was evidence from which the jury might find that the favored beneficiary was active in procuring the execution of the paper propounded for probate, clearly making a case for jury decision on the question of undue influence. Mindler v. Crocker, supra, and authorities cited in the opinion of the court 245 Ala. at page 583, 18 So.2d 278.

The burden of proof was on the plaintiff to show that the alleged will was in writing, was in form and substance testamentary in character and that it was duly executed and attested as required by the statute. §§ 24 and 25, Title 61, Code of 1940. This done, the burden of going forward with the evidence shifted to the defendant to sustain the averments of his pleas, not by a "preponderance of evidence," but to the reasonable satisfaction of the jury. Reynolds v. Massey, 219 Ala. 265, 122 So. 29; Little v. Sugg, 243 Ala. 196, 8 So.2d 866. Treating the excerpt quoted from the oral charge as the issues "made up by the court," it is not only subject to the criticism that it assumed the due execution of the will, but also ignored one of the issues in the case, and imposed on the defendant a greater burden than the law required. Southern Ry. Co. v. Riddle, 126 Ala. 244, 28 So. 422; Moore v. Heineke, 119 Ala. 627, 24 So. 374; Torrey v. Burney, 113 Ala. 496, 21 So. 348; 5 Mayf.Dig. p. 142, § 27.

Both the court and the jury were entitled to see and inspect the will and its attestation and in its absence in evidence the court erred in refusing the affirmative charge requested by the defendant in writing.

The motion for a new trial challenges the validity of the verdict on the grounds that is is contrary to the law and evidence in the case; contrary to the law; and that the verdict is not responsive to the issues. The form of the verdict was: "We, the jury, find for the will." By the terms of the statute cited supra, after the issues are made up from the pleadings, the trial must be had in all other respects as trials in other civil cases in the circuit court. It is familiar trial practice to the bench and bar that in such trials the verdict in form should be: "We, the jury, find the issues in favor of the plaintiff" or "We, the jury, find the issues in favor of the defendant." The paper propounded for probate is not a party to the suit. Nor was it made a part of the testimony in the case. The verdict, "We, the jury, find for the will" was not responsive to the issues. It may be thought that Lanier v. Richardson, 72 Ala. 134, and Lanier v. Russell, 74 Ala. 364, decisions in the same case,— one on mandamus and the other on appeal, support the form of verdict rendered in this case. But it is clear from an examination of those decisions that they were dealing not with the verdict, but with the question of what date the decree on the verdict should be entered. We have examined the original record in the last mentioned case, the appeal from the Probate Court of Madison County, and find the verdict was in the following form:

"Jury's Verdict: In the matter of the contest of the Will of Mrs. M. W. McCalley, deceased. We the jury find for proponent."

We find a dearth of authority touching specially on the question of the form of verdict in will contests. The most analogous to the one here under consideration is the verdict in Vanvalkenberg v. Vanvalkenberg, 90 Ind. 433, where the verdict was in the following form: "We, the jury, find that the writing in question, which was read to the jury, is the last will of said M. Vanvalkenberg". The court there held that although informal the verdict was "sufficient, no paper but the contested will having been read to the jury." Another form approved in an early Kentucky case (Bledsoe's Ex'r v. Bledsoe, 8 Ky.Law Rep. 55, 1 S.W. 10, 11) was: "We, the jury," find this

"not to be the will of the testator," naming him, signed by the foreman. The court held this to be sufficiently clear and responsive to the issues. These cases are cited in 68 C.J. p. 1124, Note 91. But the text found on that page supports the view that the verdicts must be, as in civil actions generally, treated more fully in 64 C.J. under the head of "Trial", §§ 874 and 876.

Inasmuch as the case must be reversed for another trial, we call the court's attention to the provisions of the statute and the general form of verdicts in the trial of civil cases.

The writer is of opinion that the verdict in this case was not in proper form.

Reversed and remanded.

FOSTER, LIVINGSTON, LAWSON, SIMPSON and STAKELY, JJ., concur as indicated in the opinion of SIMPSON, J.

SIMPSON, Justice (concurring specially).

Because the will was not introduced in evidence a reversal of the judgment is in order and on this basis I concur in the result reached in the opinion of Mr. Justice Brown.

It is my view, however, the proceedings to probate the will, including the contest thereof after transfer to the circuit court, were in rem (Caverno v. Webb, 239 Ala. 671, 196 So. 723 [5-6]) and that, though the verdict returned was somewhat irregular, it was sufficiently responsive to the issue tendered for the resting of a proper judgment. 68 C.J. p. 1124, § 10 and note 91.

FOSTER, LIVINGSTON, LAWSON and STAKELY, JJ., concur in these views.